ALICE McCORMICK BEMIS, a widow, v. SCOTT M. LOFTIN,
HENRY LAWALL BEMIS, and ATLANTIC NATIONAL BANK
OF JACKSONVILLE, FLORIDA, as Trustees and Executors
under the last Will and Testament of Henry Ellsworth
Bemis, deceased, *et al.*

173 So. 683.
Opinion Filed March 23, 1937.
Rehearing Denied April 24, 1937.

516

*Davis & Davis, Charles M. Moon,* and *A. N. Spence,* for Appellant;

*Loftin, ·Stokes & Calkins, Scott M. Loftin, John P. Stokes, Gedney, Johnson & Lilienthal, Harold B. Wahl,* and *Harry A. Johnston,* for Appellees.

DAVIS, J.—This was a proceeding in equity brought by the appellant, Alice McCormick Bemis, to set aside a decree of the Circuit Court of Duval County, made and entered in 1896, annulling a marriage that had been .contracted by complainant with one H. E. Bemis in New York State on September 10, 1891, of which marriage a child was born January 19, 1892. It was the contention of the appellant that the annulment decree of 1896 was void because of absence of jurisdiction of the Circuit Court of Duval County over defendant's person, absence of jurisdiction over the marriage *res,* and void on account of fraud perpetrated by complainant, H. E. Bemis, in that suit both upon the defendant and upon the Court rendering the decree. It was prayed that in addition to setting aside the marriage annulment decree above referred to, that the Court in this case should adjudge the complainant to be the lawful widow of H. E. Bemis and that she be awarded dower in the latter's estate. The relief sought was denied and the complainant below appealed.

In deciding the case in the Court below, the Chancellor pronounced the following findings of law and fact as applied to the case at bar:

"With reference to the merits of the cause, it is the finding of this Court that the procural of the decree of annulment bearing date of November 27, 1896, in so far as it terminated the marriage relationship between the parties, was the result of fraud participated in by the defendant in that suit, and practiced upon the Court without any knowledge on the part of the Court or counsel concerning it. Undoubtedly both ·parties desired the termination of this mar-

riage relationship, and were then quite willing to resort to the means used, in order to bring about that end, promptly and with a minimum of publicity. In view of the fact that the original fraud was participated in by both parties, and the further fact that the plaintiff in this suit is not only estopped by her conduct but barred by laches, no relief can be granted her.

"There is nothing to indicate, however, that either party actually considered the child illegitimate or that either party ever thereafter acted upon any such finding or belief. Since the fire which destroyed the original court records in May, 1901, the only known copy of the decree of annulment reposed, until the death of the plaintiff in the annulment suit, in the private vaults of that plaintiff. He successfully kept its real contents a secret as long as he lived. It does not appear that the defendant in that suit, or the child, ever had any knowledge of the provisions of the decree which sought to declare the child illegitimate, until some 38 years later and after the death of her father. Except in order to terminate the marriage, both parties continuously recognized through a long period of years, that the child was the legitimate child of both and entitled to all the privileges of a child.

"The marriage of the parties was perhaps voidable, construing the marriage in the light most favorable to the plaintiff in the annulment suit, and assuming that the Court had jurisdiction. There is nothing to show that a child born during wedlock should be decreed to be an illegitimate child. She was only four years of age when the decree was entered. She has never had her day in court. Her rights while respected by the parties for almost forty years, seem to have been ignored by the plaintiff in the annulment suit,

in asking the Court to declare her to be illegitimate. However, the child seeks no relief in this suit. Thereupon;

"It Is Ordered, Adjudged. and Decreed that Inez Austin Bemis is the lawful widow of the deceased Henry Ellsworth Bemis, and entitled to dower in his estate, and that the amended bill of complaint be dismissed, with costs in an amount to be hereafter fixed by the Court, taxed against plaintiff.

"It Is Further Ordered, Adjudged and Decreed that this decree be entered without prejudice to the rights of the child—now Isabel Mallien—to take such action as may be proper with reference to her status or claims as a child of the parties in the annulment suit."

In seeking reversal of the foregoing decree, appellant takes the position that the suit at bar is a direct attack on the chancery decree of annulment of marriage rendered in Duval County Circuit Court of November 27, 1896, in an original proceeding instituted for that purpose, and that the whole case must turn upon the validity *vel non* of the annulment decree in the light of appellant's contention that (1) there was no service of process personally had upon appellant as a defendant in the 1896 annulment suit, in Florida or elsewhere; (2) that the constructive service attempted to be had by publication against her was void because no constructive service by publication in a newspaper in such cases had been authorized by statute when the case was brought in 1896; (2) an annulment proceeding respecting marriage is a proceeding *in personam* and therefore constructive service would be unavailing if provided for by statute; (4) that while a praecipe for personal appearance of defendant in the former case appears to have been filed and regarded as authentic by the Court passing the decree

therein, that such praecipe for appearance was in fact unauthorized and unsigned by the defendant therein, who never became bound thereby, and (5) that the *res* of the marriage sought to be annulled and decreed in the former case to be annulled was in New York where it had been contracted and not in Florida, and that at the time of the annulment suit neither plaintiff nor defendant therein was a citizen or resident of Florida authorized to maintain such a suit in this state.

The facts upon which the Chancellor decided the case may be briefly summarized as follows: In the Fall of 1890 one H. E. Bemis (now deceased) became involved in an affair of sex with a school girl by the name of McCormick, the present appellant, who sued below as Alice McCormick Bemis. She advised him that she was about to become a mother and solicited from him the protection of a marriage to meet the situation. The marriage was performed and the child born, but further than this nothing was done to act upon the marital relationship.

Sometime later the wife made a statement at Bemis' request, according to her present testimony, that in truth and in fact the child so born after the marriage ceremony, was not Bemis' child. Upon the basis of such statement the marriage was annulled by the decree of 1896. After the annulment, the former wife took another man and lived with him until the latter's death in 1916. Two thousand dollars life insurance was subsequently collected by appellant in her assumed status of widow of the last mentioned man as her husband. Later Bemis contracted and consummated three marriages, one of which resulted in the birth of a child. During all of the time subsequent to the 1896 annulment decree the appellant, although knowing of Bemis' situation and subsequent marriages predicated on the un-

challenged validity of the 1896 annulment decree aforesaid, never attempted to interfere with Bemis with respect to said subsequent marriages, nor did she abdicate her own assumed position as the wife of a second husband whom she lived with in a marital relationship from 1903 until 1916. It was not until after Bemis' death in 1934 that any objection to the 1896 annulment decree was interposed, and then only in an effort to have such annulment decree set aside in order that appellant might be decreed to have dower in the deceased Bemis' estate.

Thus summarized, the facts adduced present a question of conflicting equities between the claim of the surviving widow of Bemis' last marriage, Inez Austin Bemis, and the equitable right of Bemis' first wife to judicially avoid, on the grounds of illegality assigned, the long standing annulment decree that had been rendered in 1896.

We shall first give our attention to the nature of the controversy before us. Is its essence a direct or collateral assault on the annulment decree of the Circuit Court of Duval County as rendered in 1896? If direct, the rule of law relied upon by appellant will control its determination. If collateral, another and different rule will prevail.

This is so because it is the duty of the courts in general to set their faces against all collateral assaults on judicial proceedings, not only because such attacks are frequently devoid of merit, but because the courts of justice should not allow themselves to be brought into dispute by having their forums looked upon by the citizenry as places where mere jugglery and smartness are substituted for justice toward innocent third parties who have become entitled to assume that acting at all, a court whose decree or judgment has been attacked, must necessarily have investigated and determined that it had jurisdiction of the subject mat-

ter of the particular case decided; that by its process, lawful in form and lawfully served, it brought before it the particular parties against whom it undertook to give, and did give, judgment on the record pendent before it at time its decision was entered.

A direct attack on a judicial proceeding is an attempt to avoid it in some manner provided by law for that purpose. In Florida direct attacks upon decrees of courts of chancery, when the decrees are valid on their face, must be brought before the particular court and in the particular jurisdiction where the challenged decree was entered in the first place. Bryant v. Bryant, 101 Fla. 179, 133 Sou. Rep. 635; Cone v. Cone, 102 Fla. 793, 136 Sou. Rep. 466; State, ex rel. Willys, v. Chillingworth, Judge, 124 Fla. 274, 168 Sou. Rep. 249. Compare Miami Bank & Trust Co. v. Mahlstedt, 107 Fla. 282, 144 Sou. Rep. 659; Kroier v. Kroier, 95 Fla. 865, 115 Sou. 753; Chisholm v. Chisholm, 98 Fla. 1196, 123 Sou. 694.

A collateral attack on the other hand, is an attempt to avoid defeat or evade a judicial proceeding by denying its force and effect in some manner not provided by law for that particular purpose. Thus an objection founded on alleged judicial errors, when made in a proceeding authorized by law for avoiding or correcting such judgment on account of such errors, and which will succeed upon the showing of the error, is a direct attack, while an attempt to do the same thing in any other proceeding, of whatsoever nature it may be, is a collateral attack that can only succeed upon showing a want of power in the tribunal whose judicial order, judgment or decree is thus challenged. Such direct attack can only be pursued within the time, and according to the manner, provided by law. Morrill v. Morrill, 20 Ore. 96, 25 Pac. Rep. 362.

And as all judicial records of orders, judgments or decrees of judicial tribunals must have their validity tried by an inspection of the record upon which they were arrived at and are a part, any attempt to overturn or overhaul them by evidence *dehors* in a proceeding not provided by law for that particular purpose, is a collateral attack. A new suit, even in the same court, to set aside a judgment valid on the face of the record of the proceedings, whether for fraud, accident, surprise, mistake, excusable neglect or other cause, not falling within the scope of an equitable bill of review, or an original bill in the nature of a bill of review, is therefore a collateral attack. Harman v. Moore, 112 Ind. 221, 13 N. E. Rep. 718; Newcomb's Executors v. Newcomb, 13 Bush (Ky.) 544, 26 Am. Rep. 222; Delgado v. Chavez, 140 U. S. 586, 11 Sup. Ct. Rep. 874, 35 L. Ed. 578.

The present suit was filed in Palm Beach County. It seeks by alleging matters *dehors* to attack the validity of a decree duly rendered by the Circuit Court of Duval County many years ago. The Duval County proceeding shows that the bill was filed by Henry E. Bemis of Jacksonville, Florida, against Alice A. McCormick Bemis, of the Town of New Dorp in the County of Richmond, State of New York. It alleges that the complainant Bemis was, and had been, a citizen of the State of Florida for two years last past prior to the filing of the bill for annulment of marriage. In rendering the final decree of annulment of November 27, 1896, the Chancellor, Honorable R. M. Call, recites that the cause came on to be heard "upon the bill, pro confesso, pleadings and testimony herein, and the Court being fully advised in the premises, finds that this Court has jurisdiction of the parties and the subject matter of this suit; that

the allegations of the bill of complaint* filed herein are true and the equity of said cause is with the complainant," etc.

So tested by all the rules to which we have made reference, the attack on the Duval County annulment decree, which contains an affirmative finding of jurisdiction of the subject matter and the parties, and which is not void on the face of the whole record in that cause, but is attacked for matters *dehors* the record by a separate proceeding launched in Palm Beach County, is a collateral and not a direct attack upon a decree which at most was voidable and not void under the situation herein presented. See: Catlett v. Chestnut, 107 Fla. 498, 146 Sou. Rep. 241. In support of the jurisdictional findings recited by the Duval County Circuit Court at the time it entered its decree of annulment against Alice McCormick Bemis, there was on file in the record what purported to be a written personal appearance in that cause signed by the non resident defendant therein. In such cases the rule is, that by allowing an appearance, a court of general jurisdiction is conclusively presumed, as against collateral attack on its decree in another court, to have determined that the entry of a personal appearance filed with it, was by one having the lawful right so to do. See: Van Fleet on Collateral Attack on Judicial Proceedings, par. 1, at page 2.

The Circuit Court of Duval County was a domestic court of general jurisdiction. Even where the record of such a court is silent as to service, it is conclusively presumed collaterally, and extrinsic evidence is inadmissible to show there was none. Swearingen v. Gulick, 67 Ill. 208, Goar v. Maranda, 57 Ind. 339; Sims v. Gay, 109 Ind. 501, 9

---

*Including the jurisdictional facts concerning the plaintiff's citizenship and residence in the State of Florda.

N. E. Rep. 120; Davis v. Hudson, 29 Minn. 27, 11 N. W. Rep. 136; McClanahan v. West, 100 Mo. 309, 13 S. W. Rep. 674; Pope v. Harrison, 84 Tenn. (16 Lea) 82; Hill v. Woodward, 78 Va. 765; Tennell v. Breedlove, 54 Tex. 540.

The conclusion we have reached as to the nature of the appellant's attack on the Duval County Circuit Court annulment decree of November 27, 1896, makes it unnecessary to consider many of the other questions interestingly discussed and ably argued by the distinguished counsel for the appellant. That decree was not void on collateral attack nor was it capable of being re-examined for fundamental defects *dehors* the judgment roll, in any proceeding brought for that purpose in the Circuit Court of Palm Beach County. Until directly attacked and adjudicated to be void, the decree in the Duval County case was at most voidable only—the jurisdictional objections being entirely *dehors* the face of the proceedings, and such as should have been addressed to the Court whose decree it was. See: State, *ex rel.* Willys, v. Chillingworth, *supra.*

Even in the Court of its rendition a voidable decree is secure against direct attack, if the defendant did not act *bona fide,* was not the victim of surprise, fraud or deceit, or participated in the fraud by which the record in that case was wrongfully made to show colorable jurisdiction. Bryant v. Bryant, *supra.*

In such cases, a Court of Chancery may apply the rule *in pari delicto melior defendentis est* and leave the original record closed to correction, where no positive rule of law, or consideration of public policy, requires the presumptively valid decree to be rendered void *ab initio* by setting it aside for jurisdictional objections shown to lie *dehors* the record and brought to the attention of the court for the first time

after other substantial equities have arisen on the strength of the record as it was originally made through the fault, connivance or fraud of the subsequently complaining party in occasioning the false record in the first instance.

The Chancellor in this case found that the decree of the Duval County Circuit Court attacked in this suit was at most voidable under the rule we have been discussing. With that conclusion we agree for the reasons heretofore pointed out. The Chancellor also found that there was fraud committed on the Duval County Circuit Court in 1896 sufficient to affect the validity of that decree, but that complainant below was a participant in that fraud and now estopped to take advantage of it to the prejudice of the subsequent marriage rights that were acquired by innocent third parties without knowledge of such fraud, and in reliance upon the face of the record, upon which no showing of the fraud appeared. With that conclusion we likewise agree.*

In arriving at such conclusion, we have not overlooked the cases of Rawlins v. Rawlins, 18 Fla. 345, and Shrader v. Shrader, 36 Fla. 502, 18 Sou. Rep. 672. Both those cases were considered in the recent case of State, ex rel. Willys, v. Chillingworth, 124 Fla. 274, 168 Sou. Rep. 249. Both the Shrader and Rawlins cases involved original equity bills in the nature of bills of review to directly attack and set aside divorce decrees as fraudulent.

The Rawlins case merely decided the propriety of the remedy of an original bill in the nature of a bill of review after the death of one of the parties to the decree sought to be annulled. The propriety of such a bill filed in a

---

*See Drummond v. Lynch (CCA 5th Circuit) 82 Fed. (2nd) 896, opinion by Judge Strum, a former Justice of this Court, rejecting a similar attack after the lapse of forty years.

court other than the court whose decree was sought to be annulled was not raised. The Shrader bill was filed in the same court in which the challenged decree had been rendered. So it was not until State, *ex rel.* Willys, v. Chillingworth, *supra,* that the nature of such a suit was held to be collateral and not direct as a means of attack when filed in the court of another county than the county wherein the alleged fraudulent decree was rendered.

The case last cited is authority for the proposition that when an attack is made, by an original bill in the nature of a bill of review filed outside the court of rendition to annul a chancery decree valid on the face of the record of the court whose decree it is, such attack to be regarded as collateral rather than direct in character, and therefore not allowable except as a collateral attack by such a bill may be maintainable under special circumstances as an incident to other appropriate equitable relief prayed in and by the same.

There has been much confusion in legal terminology with reference to void and voidable decrees and direct and collateral proceedings to attack them. The distinctions are important only in so far as they pertain to the methods of procedure required to achieve the annulment or reversal of a judgment or decree that has been illegally entered.

A decree of a domestic court of general jurisdiction valid on the face of the record, but capable of being successfully avoided for matters *dehors,* is voidable only, so long as the record remains as it is, but when properly moved against and set aside by judicial action, it becomes void *ab initio,* especially where it is successfully attacked on jurisdictional grounds and adjudged invalid, because the supposed jurisdictional facts alleged to support it did not in truth and in fact exist, or were fraudulently imposed upon the court

whose apparent jurisdiction was invoked on the strength thereof.

We approve the reasoning and conclusions of the Chancellor as stated by his decree in this case, and so agreeing, it is our opinion and judgment that the decree appealed from be and the same is hereby affirmed.

Affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, and BUFORD, J. J., concur.