144 So.2d 83 (1962)
Claire MARTZ, Alias Claire Martin, Alias Claire Waters, Alias Claire Riskamm, Alias Claire Bishop, Individually, and Claire E. Riskamm, Alias Claire E. Riskamm, Bishop, Alias Claire Martz, As Executrix of the Estate of Joseph L. Riskamm, Appellant,
v.
Mary RISKAMM, Appellee.
No. D-192.
District Court of Appeal of Florida. First District.
July 10, 1962.
Rehearing Denied September 18, 1962.
*84 Truett & Watkins, Tallahassee, for appellant.
Hall, Hartwell & Hall, Tallahassee, for appellee.
RAWLS, Justice.
This cause involves an attack on a decree of divorce entered in the Circuit Court of Jefferson County in 1945, and a prayer for allocation of dower. The Chancellor entered a final decree in favor of appellee-plaintiff, Mary Riskamm, from which appellant-defendant, Claire Martz (alias Claire Riskamm) has appealed.
The characters in this tragedy of domestic problems are Joe, Mary and Claire Riskamm who will be referred to by their first names. Joe and Mary were married in 1923. Three children born of this marriage are now living. In 1926, Joe and Mary moved to Red Bank, New Jersey and about one year later purchased a home having the address of F.R.D. 127, Red Bank, New Jersey. Sometime later and probably before the divorce proceedings hereinafter mentioned, the mailing address of this house was changed to Box 414, R.F.D. 1, Red Bank, New Jersey.
Joe, Mary and their children lived in this home until 1933 when Joe deserted his family and went to New York. Mary and the children continued to live in the same home until the children grew up and established their own homes, and Mary has continuously resided in said home until this suit was instituted.
The history of Joe's relationship with Claire began when they met in New Jersey in the year 1932, at which time Joe was steward of the Rumson Country Club. Shortly after they became acquainted Joe and Claire decided to go in business together and opened a restaurant called the Lewis House. Joe continued his employment with the country club and helped Claire in the operation of the Lewis House on a part-time basis. In 1933 the Lewis House went out of business, Joe lost his job with the Rumson Country Club, deserted Mary and went to New York. Between 1933 and 1939, Joe and Claire had numerous *85 contacts in New York during which time Claire and her parents loaned Joe money on several occasions. Claire knew that Joe was married to Mary and that Mary and the three children lived in Red Bank, New Jersey. In 1939, Mary learned of Joe's whereabouts, went to New York and importuned him to return home. Joe was noncommittal about returning home with Mary but he signed papers in connection with their home at Mary's request. Immediately after Mary's visit with Joe in New York she instituted criminal charges of desertion in the courts of New Jersey, but when the warrant reached New York, Joe had left for Florida. Joe was never apprehended on the criminal charges and they were finally dismissed sometime in the fifties. Mary did not learn of Joe's residence or whereabouts again prior to Joe's death in Apalachicola, Florida, in 1958.
In 1939, shortly after Mary's visit with Joe in New York, Joe and Claire came to Florida together and began living as husband and wife, a relationship which continued until Joe's death. They spent about two years in the greater Miami area and then secured employment at Camp Gordon Johnson in Franklin County, Florida. In 1944, they leased the Gibson Hotel in Apalachicola and moved to that city where they continued to live together until Joe's death.
On July 18, 1945, Joe filed a suit for divorce against Mary in the Circuit Court of Jefferson County, Florida, and in order to secure constructive service of process, made an affidavit stating that he had made diligent search and inquiry to determine the address of the defendant but that her address and residence were unknown to him. Actually Mary had continuously lived in the same house that she and Joe were occupying at the time he deserted her. Nevertheless, on the strength of Joe's affidavit, constructive service of process was had and a final decree of divorce was rendered October 3, 1945. Noticeably absent is any evidence that inquiry was made of the person most likely to know if Mary had moved from Red Bank  Joe's brother, Rudolph, who lived within a few blocks of the Joe Riskamm home continuously from a period shortly after Joe and his family moved to New Jersey until the present time.
In the divorce proceeding Claire served as Joe's only corroborating witness, using her maiden name, Claire Martin, for the occasion. Claire testified in the divorce case that she was "around Joe and Mary, right in their home" and that Mary frequently came into Joe's place of business and that she "bickered and bickered constantly". She now testifies that she saw Mary only once before the present litigation and that Joe was not present at that time. The Chancellor found that another highly impressive circumstance of fraud is the fact that Joe, long after the divorce, took extreme precautions to prevent Mary from learning of his whereabouts. Detailed by the Chancellor were many other findings of fact which taken as a whole reveal a premeditated, calculated and intentional fraud perpetrated upon the Circuit Court of Jefferson County, Florida, by Joe and Claire in the procurement of Joe's divorce from Mary. On November 13, 1945, Joe and Claire were married in Dothan, Alabama.
Claire as appellant in this cause urges that the Chancellor committed an abuse of judicial discretion in setting aside the decree of divorce upon the quantum of proof submitted in support of the claim of fraud and states in her brief that the burden of proving the fraud must be established by "clear and convincing evidence".[1] We point out that no rights of third parties are involved in this litigation. It would be a travesty upon the definition of the word "equity" if the courts of this state should subscribe to the philosophy that it is permissible for a woman to "take up with a man" in one state knowing that he *86 has a lawful wife and three children dependent upon him, move with this man to another state and live with him for many years in a bigamous relationship holding herself out to the general public in the latter state as his lawful wife, then accompany him into the courts of equity and for this occasion shed herself of her "husband's name" and present herself to the court as a single woman, perjure herself as a corroborating witness to sustain her paramour's plea for divorce, then marry her paramour, and subsequently present herself back into a court of equity and claim that clear and convincing evidence has not been presented of the fraud perpetrated on the courts. Frankly, we cannot envision a factual situation which would more clearly meet the test of clear and convincing evidence in a case of this sort. That the husband likewise committed a fraud upon the court is apparent alone from the contents of his affidavit of "diligent search and inquiry". The appellant urges that the case of Grammer v. Grammer[2] is conclusive of her position. As stated by the Chancellor, the Grammer case is easily distinguishable from the instant one in the following parts:
1. The husband in the Grammer case stated in his affidavit the city and street of the wife's residence  in the case at bar neither city nor street was stated in the affidavit.
2. In the Grammer case the complainant husband had inquired of his sister whom he thought might know the wife's residence  in the case at bar the defendant had a brother living within a few blocks of the wife and no inquiry was made of the brother.
3. In the Grammer case the second wife was entirely innocent of any connection with the failure to give the exact address of the defendant. In the case at bar the wife married after the divorce was a party to the imposition upon the court.
The next point concerns Mary's claim of dower. Joe Riskamm died testate, devising all of his property to Claire. The will was admitted to probate, and subsequently upon Claire's application, an order of administration unnecessary was entered by the County Judge of Franklin County, Florida. Joe's major asset was an interest in the Gibson Hotel property located in the city of Apalachicola, Franklin County, Florida, title to which was taken in 1954 by Joe and Claire as an estate by the entireties. The order of administration unnecessary was predicated upon the basis that title to the hotel property was vested in Claire as Joe's surviving spouse, and, therefore, the probate court had no jurisdiction of said property. The Chancellor found that Joe and Claire's purported marriage was void and of no effect, and that Mary is the lawful widow of Joe Riskamm. This resulted in a finding that Joe and Claire owned the Gibson Hotel property as tenant in common and that Mary has dower consisting of a one-sixth interest in the Gibson Hotel.
Claire urges numerous procedural defects in the foregoing conclusion of the Chancellor, the first of which concerns lack of jurisdiction of the Circuit Court of Jefferson County to allocate dower in real property located in Franklin County, Florida. The appellant urges that the Circuit Court has usurped the jurisdiction of the County Judge of Franklin County, has set aside its orders in matters involving the estate of a deceased resident of Franklin County, and allocated dower in real property located in said county. Reviewing the procedures involved in this case, it is noted that the instant cause was initially brought in Franklin County and upon the motion of appellant, same was dismissed. The next step was the filing of a complaint in Jefferson County, Florida, its primary purpose being an attack on a final decree of that circuit court. If the Jefferson County decree was valid, plaintiff-Mary had no claim to assert in Franklin County; if good, *87 she possessed a claim. Concurrent with the filing of her complaint in Jefferson County, Mary filed a lis pendens in Franklin County covering the real property in which Mary claimed an interest. This lis pendens assured Mary that any interest she might have in the property would be preserved until final disposition of her claims. During the course of the instant cause, and prior to final decree, the following stipulation was entered into by respective counsel:
"It is hereby stipulated and agreed between the parties hereto, by their respective counsel, that the Court enter an Order removing the Lis Pendens heretofore filed in Franklin County, Florida, covering the property more specifically described in said Lis Pendens, with the provision that in the event the property should be sold by the defendant, Claire Riskamm Martz, then of the purchase price received from the sale of the property there shall be held in trust the sum of fifty per cent (50%) of the proceeds of such sale, which amount shall be held to satisfy whatever interest the Court may find is vested in the plaintiff, Mary Riskamm."
By this stipulation, Mary surrendered her right to maintain the lis pendens against the Franklin County property, and by like token Claire agreed to place in trust fifty per cent of the proceeds of the sale of the property to satisfy whatever interest the court may find is vested in Mary. Clearly, the above stipulation contemplated a complete disposition of the matter litigated by the Circuit Court without any further proceedings in Franklin County. The crux of the litigation was the determining of the identity of the lawful widow, and such determination was properly submitted to the Circuit Court of Jefferson County.[3]
The establishment of Mary as the lawful widow of Joe, vested in her the right to assert her claim of dower, which she did in the equitable action praying for relief. The contents of the foregoing stipulation clearly display a recognition by Claire of Mary's claim of dower and an agreement to satisfy this claim from the proceeds of the sale of the Franklin County property. To require further proceedings by Mary would negate the terms of the stipulation entered into between the parties.
Appellant's next contention is that any right of dower in Mary Riskamm is barred because of her failure to file her election to take dower within three years after Joe Riskamm's death. Section 731.35 (3), F.S. 1957, F.S.A., which was in effect on March 4, 1958, the date of Joe's death, provided: "Any dower interest a widow may have in any realty shall be barred unless, within nine months after the first publication of notice to creditors or three years after death of her husband, whichever first occurs, such widow files and records * * * her claim of dower * *." Before the expiration of the three-year period the statute was amended by Chapter 59-123, Laws of Florida, which eliminated the three-year limitation leaving only the requirement that election to take dower must be filed within nine months after the first publication of notice to creditors. Since no publication of notice was ever filed, there is no bar. The Chancellor found as a matter of law that the legislature may extend the statute of limitations with respect to a claim which is not barred at the time such extension statute was enacted. The general rule adopted in Corbett v. General Engineering & Machinery Co.[4] is:
"Since limitation laws prescribing the time within which particular rights may be enforced relate to remedies only, it is well settled by the authorities *88 that the legislature has the power to increase the period of time necessary to constitute limitation, and to make it applicable to existing causes of action, provided such change is made before the cause of action is extinguished under the pre-existing statute of limitations, and provided further that no agreement of the parties is violated. A statute of limitations enlarging the time within which an action may be brought as to pending cases is not retroactive legislation and does not impair any vested right."
The Corbett case further held that there was no vested right in the running of a statute of limitations unless it has completely run and barred the action. In this case the statute fixing the time limitation for filing claims in workmen's compensation cases was extended by statutory amendment after the injury occurred but prior to the expiration of the time allowed for filing same  just as in the case at bar. Another similarity between the two cases can be found in the fact that the amending statute is silent as to whether it would apply to claims then in existence. However, we hold, as did the Corbett case, that the repeal of the former act removed the bar contained therein for any claim in existence at that time.
Appellant has forcefully argued that the statute in question is a non-claim statute and not a statute of limitation subject to the rule in the Corbett case. However, the Corbett rule was followed in Walter Denson & Son v. Nelson[5] which involved the statutory period for applying for modification of a workmen's compensation award. There it was held that although the statute was not strictly a statute of limitation, it was in the nature of statutes of limitation and sufficiently analogous that the Corbett rule may be appropriately applied.
Appellant's final contention is that the Chancellor erred in applying F.S. Section 735.11, F.S.A.[6] to the facts of this cause in the allowance of attorney's fees to Mary, that Mary is not an heir within the meaning of this section, and that the instant suit was not brought in the county in which the order of administration unnecessary was entered. As to these contentions we agree with the following statement of the Chancellor in his memorandum opinion:
"It may be suggested that a widow is not an `heir', but the Court is of the opinion that as used in the statute under consideration the word heir should be construed as being broad enough to include a widow. The word heir is defined by the Statute (731.03) as having the same meaning as `next of kin' and next of kin has been construed in many cases as including a spouse when this construction seems necessary in order to arrive at the intent of a writing. It would seem most illogical and unreasonable for the legislature to permit an interested adult son or daughter to set aside an order of administration unnecessary and deny the same right to the widow. The obvious purpose of Section 735.11 is to permit all interested persons to attack an order of administration unnecessary *89 within three years from the death of the decedent.
"Another possible objection to the application of Section 735.11 to the instant proceeding is the requirement that a suit to establish the rights of persons injured by the order of administration unnecessary `may be brought only in the county in which the order of administration shall have been entered.' The Court construes this to be a statute fixing venue as distinguished from jurisdiction. As a statute of venue the defendant in this case is estopped to invoke it because the plaintiff first instituted suit in Franklin County and the defendant objected to the jurisdiction of Franklin County and insisted that since the validity of a Jefferson County divorce decree was involved the case must be brought in Jefferson County and the Court on her motion dismissed that action whereupon the present suit was instituted in Jefferson County. The defendant is therefore estopped to say that the suit should be prosecuted in Franklin County."
We note on the question of estoppel as found by the Chancellor that the initial motion to dismiss the complaint filed in Franklin County was directed toward the entire complaint including those portions of same pertaining to the venue of the Circuit Court of Franklin County as to the entrance of the order of administration unnecessary. Of particular significance is the fact that Franklin County and Jefferson County lie in the same judicial circuit; that the Chancellor sitting as Circuit Judge in Franklin County granted appellant's motion to dismiss the initial complaint; and that the same Chancellor sitting as Circuit Judge of Jefferson County presided over the instant cause. Appellant's position might be on firmer ground had she directed a motion to strike only those portions of the Franklin County complaint pertaining to the decree of divorce rendered in Jefferson County; however, since she failed so to do we agree with the Chancellor's conclusion that appellant cannot now challenge the jurisdiction of Jefferson County Circuit Court.
Other points raised by appellant have been fully considered and we find same without merit; therefore, the decree of the Chancellor is affirmed.
CARROLL, DONALD K., C.J., and STURGIS, J., concur.
NOTES
[1] Dye v. Dolbeck, 114 Fla. 866, 154 So. 847 (1934).
[2] Grammer v. Grammer, 80 So.2d 457 (Fla. 1955).
[3] Bemis v. Loftin, 127 Fla. 515, 173 So. 683 (1937); State ex rel. Willys v. Chillingworth, 124 Fla. 274, 168 So. 249 (1936).
[4] Corbett v. General Engineering & Machinery Co., 160 Fla. 879, 37 So.2d 161 (1948).
[5] Walter Denson & Son v. Nelson, 88 So.2d 120 (Fla. 1956).
[6] Section 735.11, F.S. 1957, F.S.A.:

"(1) Any creditor or claimant against the estate of a decedent may by bill in chancery, filed at any time within three years from the death of the decedent * * * impress a trust upon all property of the decedent * * *.
"(2) * * * Such suits may be brought only in the county in which the order of administration shall have been entered.
"(3) Any heir * * * who was lawfully entitled to share in the estate but who was excluded by the order of administration unnecessary may enforce his rights against those who procured such order * * *.
"(4) In all such cases plaintiffs shall be awarded reasonable attorneys' fees as an element of costs."