W. SHARP, Judge.
Edward Popper appeals from a judgment which established a Mexican divorce decree as a Florida judgment and enforced it by finding he owed his former wife, Ludie Popper, $103,174.66 in arrearages for unpaid permanent periodic alimony since 1976. It also decreed that Edward owed Ludie $35,119.86 (included in the above larger sums) as unpaid amounts which had accrued during the last five years pursuant to a settlement agreement entered into by the parties in 1970. Edward raised the defenses of laches and the five year statute of limitations,[1] and sought to collaterally attack the Mexican decree because of lack of subject-matter jurisdiction. We affirm.
In 1987, Ludie filed suit against Edward in Florida and achieved personal service on him. She was then residing in Missouri and he was a resident of Winter Park, Florida. At the time of the jury trial in 1988, Edward was in North Carolina. He was represented by an attorney in this proceeding but no evidence or testimony was presented on his behalf.
The record in this case establishes that these parties were married in New York in *102 1946. Two children were born. While residing in Connecticut in 1970, the parties entered into a separation and settlement agreement.
The agreement recites that the parties intended to settle and adjust “all rights of support and maintenance and property rights, and other rights, claims or demands arising out of the marital relationship, as well as to provide for the custody, maintenance, care and education of their children .... ” The agreement provided for the support and custody of their two children. Regarding Ludie’s maintenance and support, Edward agreed to pay her $585.33 per month as permanent periodic alimony after the youngest child reached his majority. The agreement also provided that it would be submitted to any divorce court and the provisions regarding alimony would be incorporated into any divorce decree subsequently obtained.
Shortly after the separation agreement was executed, Edward went to Mexico. He filed for a divorce from Ludie in the City of Juarez, Chihuahua. Ludie testified she did not participate in the Mexican lawsuit. An attorney apparently did represent her in the Mexican litigation. He was obtained for her by her Connecticut attorney. The Mexican court actually granted Ludie’s counterclaim for divorce, which had been filed on her behalf by her Mexican attorney.
The Mexican decree approved the separation agreement and incorporated it by reference into the decree, as though recited therein “in full.” It also recited that Edward had personally appeared before the Mexican court and submitted himself to the court’s jurisdiction and competence. It noted that Edward had presented to the court as proof of his residence in Mexico, the certificate of his inscription in the Official Book of Residents of Juarez.
When asked at trial whether Ludie knew that Edward never was a bona fide resident of Mexico, she replied only that she did not know. After the separation agreement was signed, she had no further contact with Edward for some lengthy, undefined period of time. She only learned (much later) that Edward had obtained a divorce from her in Mexico. She has never attacked the validity of the Mexican divorce decree.
Until the youngest child reached his majority, Edward met his child support and alimony obligations under the decree and separation agreement. After 1972 the payments began to “fall off” and become irregular. Edward made no alimony payments in 1976, only $100 in 1977, and nothing thereafter.
Ludie was then living in Missouri with her mother. She contacted her Connecticut attorney, who wrote letters to Edward’s attorney but was unsuccessful in getting Edward to bring her alimony payments current. She then consulted an attorney in Missouri. He assisted her in locating Edward in Florida, and in bringing this lawsuit.
Ludie never had any conversation with Edward in which she agreed to accept lesser alimony payments or no payments. Her major problem has been to locate him. He is apparently adept at moving on. No adequate explanation was made for his failure to personally appear at the trial below.
I. COMITY AND ENFORCEMENT OF THE MEXICAN DIVORCE DECREE AS A FLORIDA JUDGMENT.
Edward initially argues the trial court erred by granting comity to the Mexican divorce decree and establishing it as a Florida decree. Suit on a foreign divorce decree to establish it as a domestic one, and then to enforce it with the full array of equitable remedies is a well-established practice in Florida. See Sackler v. Sackler, 47 So.2d 292 (Fla.1950); McDuffie v. McDuffie, 155 Fla. 63, 19 So.2d 511 (1944). When the out-of-state decree is one entered by the court of a foreign nation rather than a state or territory of the United States, the Florida court has discretion as to whether to recognize it and give it effect— a matter of “comity.” See Pawley v. Pawley, 46 So.2d 464 (Fla.), cert. denied, 340 U.S. 866, 71 S.Ct. 90, 95 L.Ed. 632 (1950); Parker v. Parker, 155 Fla. 635, 21 So.2d *103 141 (1945), cert. denied, 326 U.S. 718, 66 S.Ct. 23, 90 L.Ed. 425 (1945).
In order to be entitled to comity, the record must show the foreign judgment partook of the elements which would support it if it had been obtained in this state. For example, the grounds relied upon for divorce must be sufficient under Florida law, the petitioning party must satisfy the jurisdictional requirements relating to residency or domicile, and basic due process and notice requirements must be met. See In re Schorr’s Estate, 409 So.2d 487 (Fla. 4th DCA 1981); Kittel v. Kittel, 194 So.2d 640 (Fla. 3d DCA 1967); Schwartz v. Schwartz, 143 So.2d 901 (Fla. 2d DCA 1962), cert. denied, 150 So.2d 442 (Fla.1963).
In this case, the Mexican decree qualified on its face for recognition and enforcement. The grounds given for the divorce were cruelty and incompatibility, which would be recognized in Florida. The decree recited further that the petitioner, Edward, was a resident of the City of Juarez, having proved such fact by being registered in the Official Book of Residents. Through her Connecticut attorney, who Lu-die testified was authorized to represent her, she had notice of the litigation.
The Mexican decree could possibly have been collaterally attacked by a showing that neither Edward nor Ludie were bona fide residents of Mexico for any substantial length of time when the divorce was obtained. However, there was no testimony or evidence offered at the trial in this case to establish that fact. Thus the recitals in the judgment are adequate. See Gaylord v. Gaylord, 45 So.2d 507 (Fla.1950).
Further, under the circumstances established by the record in this case, the trial court’s decree should also be sustained because Edward is barred from collaterally attacking the Mexican judgment. Edward was the party who went to Mexico to obtain the decree and who made the residency allegations he now tries to claim were false. Even if he had so testified at trial he would be estopped from doing so. The claimed fault or defect in the Mexican decree (lack of Edward’s bona fide residency in Mexico) was caused by his own fault and connivance. The Florida Supreme Court held in Bemis v. Loftin, 127 Fla. 515, 173 So. 683 (1937) that in a similar case the trial court had appropriately applied the rule “in pari melior est conditio defendents.” See also Ponce De Leon Fountain of Youth Co. v. Day, 90 Fla. 197, 105 So. 814 (1925); Arnold v. Arnold, 500 So.2d 739 (Fla. 3d DCA 1987); Herout v. Lawrence, 423 So.2d 558 (Fla. 1st DCA 1982).
II. STATUTE OF LIMITATIONS AND LACHES
With regard to the trial court’s ruling on Count II, the cause of action based on the separation agreement standing alone, we find no error. The suit was premised on a contract calling for periodic monthly payments. Each payment became due on the first day of each successive month. Thus the five year statute of limitations bars the enforcement of any payment in default more than five years prior to the filing of this lawsuit. See Isaacs v. Deutsch, 80 So.2d 657 (Fla.1955); Central Home Trust Co. of Elizabeth v. Lippincott, 392 So.2d 931 (Fla. 5th DCA 1980); 51 Am.Jur.2d Limitation of Actions § 133 (1970).
However, with regard to Count I, the domestication of the Mexican decree of divorce and its enforcement as a Florida judgment, the statute of limitations is not applicable to the alimony arrearages which have accrued since 1972.[2] Florida courts take the position that enforcement of periodic alimony and child support orders are equitable proceedings in nature and such obligations are not barred by the running of the statute of limitations. See Bloom v. Bloom, 414 So.2d 1153 (Fla. 3d DCA 1982); Melvin v. Melvin, 391 So.2d 691 (Fla. 1st DCA 1980), rev. denied, 399 So.2d 1144 (Fla.1981); Armour v. Allen, 377 So.2d 798 *104 (Fla. 1st DCA 1979); See also Stephenson v. Stephenson, 52 So.2d 684 (Fla.1951); Lightsey v. Lightsey, 150 Fla. 664, 8 So.2d 399 (1942); Newman v. Newman, 459 So.2d 1129 (Fla. 3d DCA 1984), rev. denied, 466 So.2d 218 (Fla.1985); Gottesman v. Gottesman, 202 So.2d 775 (Fla. 3d DCA 1967), cert. denied, 209 So.2d 671 (Fla.1968). Alimony, like child support, is held to be a continuing obligation by the Florida courts, not treated as an “ordinary” legal debt.[3]
Even if the statute of limitations is not applicable to support awards in divorce decrees,[4] in some cases the payments may be defeated by facts establishing the defense of laches or estoppel. Lanigan v. Lanigan, 78 So.2d 92 (Fla.1955); Hall v. Wilson, 530 So.2d 410 (Fla. 3d DCA 1988); Robinson v. State Department of Health and Rehabilitative Services on Behalf of Robinson, 473 So.2d 228 (Fla. 5th DCA), appeal dismissed, 478 So.2d 53 (Fla.1985); Armour v. Allen; Brown v. Brown, 108 So.2d 492 (Fla. 2d DCA 1959). But Edward failed to prove either estoppel or laches. He presented no testimony or evidence that Ludie tacitly or expressly agreed to take no alimony in exchange for his taking some action in reliance thereon, or that he would be in any way prejudiced by her pursuit of the moneys long owed to her.
Mere delay in filing an enforcement suit, even if Ludie had known where Edward was, is not sufficient by itself to constitute laches or an estoppel. Stephenson v. Stephenson; Bloom v. Bloom; Jimenez v. Jimenez, 309 So.2d 38 (Fla. 3d DCA 1975); Gottesman v. Gottesman. However, this record suggests that any delay in enforcing alimony arrearages was caused not by Ludie, but by Edward, himself. As did the former husband in Lightsey, Edward apparently secreted himself from Lu-die after becoming delinquent in the payments owed her. She did not know where he was, and was only able to locate him (shortly before this suit was filed) in Florida through the efforts of her Missouri attorney. Under these circumstances, Lu-die is entitled to recover the full arrearages owed.
Accordingly, the judgment below is AFFIRMED.
PETERSON, J., and SAWAYA, T.D., Associate Judge, concur.

. Section 95.11(2)(a), Fla.Stat. (1989).

. But see Boyer v. Andrews, 143 Fla. 462, 196 So. 825 (1940); Winland v. Winland, 416 So.2d 520 (Fla. 2d DCA 1982); 70 ALR2d 1250 Annot: Alimony or Support Orderd — Action—Time (1960).

. Sackler v. Sackler, 47 So.2d 292, 294 (Fla.1950).

. Edwards also argued there is no order to pay alimony in the Mexican decree. However, the separation agreement specifically provided the alimony provisions would be incorporated in any subsequent divorce judgment. The Mexican decree approved the agreement and incorporated it in full as though repeated in the judgment. This establishes the judgment as one ordering payment of alimony, enforceable by contempt measures. Solomon v. Solomon, 149 Fla. 174, 5 So.2d 265 (1941).