The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

George William **BURNS,**
Defendant-Appellant.

No. 81CA1148.

Colorado Court of Appeals,
Div. III.

Dec. 29, 1983.

Rehearing Denied Jan. 26, 1984.

Certiorari Granted Aug. 27, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Barbara S. Blackman, Deputy State Public Defender, Denver, for defendant-appellant.

TURSI, Judge.

The defendant, George William Burns, was convicted by a jury of felony murder pursuant to § 18–3–102(1)(b), C.R.S.1973 (1978 Repl.Vol. 8), based upon the enumerated underlying felonies of second degree burglary, second degree kidnapping, and aggravated robbery. Defendant was additionally convicted of theft. On appeal defendant contends that the trial court erred in refusing to instruct the jury on self-defense as it pertains to the felony murder charge. Defendant also contends that the trial court erred in denying his motions for judgment of acquittal regarding the charges of aggravated robbery and kidnapping at the close of the People's case and at the close of trial. *See* Crim.P. 29(a). We affirm.

The events giving rise to the convictions here at issue are as follows. Twenty-one year old Scott Stansbury lived alone in an apartment in Windsor, Colorado. On January 4, 1981, Scott went to Stacey Pina's for a friendly visit. After he left, Kelley Kraus and the defendant stopped in to see Stacey. Stacey told defendant and Kelley that she wanted Scott's stereo system. The three devised a plan whereby they would cause Scott to fall asleep from drinking alcoholic beverages. Once Scott was asleep, they would enter his apartment and steal the stereo system. Stacey, Kelley, and the defendant invited themselves into Scott's apartment. After seeing Scott's gun collection, defendant told Stacey to take the guns and drop them out the window. Stacey did so.

Later in the evening defendant asked Scott if he wanted to go with him to buy some cigarettes. Scott agreed and the two left the apartment. The defendant told Stacey that he would take Scott on a long drive, beat him up, and leave him in order to give Stacey and Kelley time to steal the stereo. While Scott was out with the defendant, Stacey and Kelley took the stereo system, two guitars, records, pictures, and other items.

From the evidence in the record, based on extra-judicial statements of defendant, it appears that the defendant and Scott stopped to drink a beer and urinate. A fight ensued between Scott and the defendant. They scuffled for a time, and then Scott broke away, ran to defendant's truck, and obtained a knife. Scott thrust the knife at the defendant. The defendant parried the blow, and the knife went into Scott's chest. The defendant dragged Scott under a bridge and then allegedly took his wallet.

Scott was dead when he was found on January 16, 1981. The autopsy revealed that Scott had been stabbed once through the right ventricle of the heart. He also had three wounds in the back, and one in the left side of the neck. The chest wound was found to be the fatal one, and would have caused death within minutes.

Defendant was charged by information with first degree felony murder, second degree burglary, second degree kidnapping, aggravated robbery, first degree murder after deliberation, and theft. Defendant pled not guilty and not guilty by reason of insanity. Defendant was found to be sane at the time of the commission of the alleged offenses.

At trial, the defendant moved for judgments of acquittal at the close of the People's case, and at the close of evidence. Both motions were denied by the trial court. At the close of evidence, the People elected not to proceed on the murder after deliberation charge. The trial court rejected defendant's proffered instructions regarding self-defense as it pertained to felony murder. The trial court concluded that self-defense was legally and factually inappropriate to the felony murder charge. However, the trial court did instruct the jury on intervening cause as it applied to felony murder.

I

Defendant contends that the trial court erred in refusing to instruct the jury on the affirmative defense of self-defense as it pertains to the felony murder charge. We disagree.

■ We do agree with the trial court that § 18–3–102(2), C.R.S.1973 (1978 Repl. Vol. 8) contains the exclusive list of affirmative defenses applicable to felony murder, and that self-defense is not available in felony murder situations.

The felony murder statute requires only that the death of a person result in furtherance of the commission of a felony. Thus, the affirmative defense of self-defense may properly be raised only as it pertains to the underlying felony, and not to the resulting death. *See People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304 (1980).

Moreover, we note that defendant's theory of defense was accidental death, which theory was encompassed in the trial court's intervening cause instruction to the jury. *See W. LaFave & A. Scott, Criminal Law* § 35 at 264 (1972).

## II

■ The felony murder statute, § 18–3–102(1)(b), C.R.S.1973 (1978 Repl.Vol. 8) provides that a person commits the crime of murder in the first degree if:

"[a]cting either alone or with one or more persons, he commits or attempts to commit arson, robbery, burglary, kidnapping ... and, in the course of or in furtherance of the crime that he is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone ...."

The necessary *mens rea* element for felony murder is supplied by the underlying felony. The statute encompasses persons convicted of complicity in the enumerated felonies. *People v. Priest*, 672 P.2d 539 (Colo. App.1983); *People v. Saiz*, 42 Colo.App. 469, 600 P.2d 97 (1979).

■ Here, there is ample evidence to sustain the jury finding that Stansbury was killed "in the course of or in the furtherance of" the enumerated felony of second degree burglary. It is undisputed that defendant took Stansbury on the long drive in order to give Stacey and Kelley the opportunity and time to steal the stereo system from Stansbury's apartment. The allegedly unintentional or accidental killing of Stansbury is the very result the felony murder statute seeks to deter. *See Whitman v. People*, 161 Colo. 110, 420 P.2d 416 (1966). Therefore, the defendant's conviction of second degree burglary supports the felony murder conviction.

## III

■ The defendant was sentenced for his felony murder conviction. And, as the trial court recognized in imposing sentence, the convictions for the three underlying felonies merge into the felony murder conviction. Accordingly, since the conviction of felony murder based upon the underlying felony of second degree burglary is affirmed, even if, as defendant contends, the convictions of second degree kidnapping and aggravated robbery, are erroneous, such error is harmless as reversal of these convictions would not cause the felony murder charge based upon burglary to fall. Crim.P. 52(a). *See People v. Bartowsheski*, 661 P.2d 235 (Colo.1983).

Judgments affirmed.

STERNBERG and BABCOCK, JJ., concur.