513 So.2d 1093 (1987)
Roy Elmon Eugene JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. BK-454.
District Court of Appeal of Florida, First District.
October 6, 1987.
*1094 Philip J. Padovano, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Norma J. Mungenast, Asst. Atty. Gen., Tallahassee, for appellee.
FRANK, Associate Judge.
Ray Elmon Eugene Jackson appeals from a judgment entered upon his convictions for the crimes of first degree felony murder, second degree felony murder and kidnapping in aid of a felony. He received a life sentence for the first degree murder and consecutive thirty-year terms for each of the other two convictions. In seeking to overturn the judgment and sentences, Jackson asserts six errors associated with his trial. We have accorded each of his contentions careful consideration and find only two warranting discussion in reaching our determination to affirm the trial court.
The facts essential to our disposition disclose that a double homicide occurred on March 26, 1981 in the course of an attempted armed robbery at a restaurant in Tallahassee. The restaurant's manager was shot and killed but before his death he killed his assailant, Jackson's partner in crime. Upon hearing the gunshots, Jackson fled. He was ultimately apprehended and, on January 16, 1985, he was indicted. Counts I and II charged Jackson as a principal, respectively, in the killings of the manager and the death of his accomplice, Count III with the kidnapping of two persons, and Count IV with the commission of attempted armed robbery, a second degree felony. The trial court, on the authority of section 775.15(2)(b), Florida Statutes (1985), dismissed Count IV on the ground that attempted armed robbery, a second degree felony, was time barred. That ruling inspired Jackson's claim before the trial court that the felony murder counts did not survive the dismissal of count IV. The trial court correctly denied the motion to dismiss counts I and II.
Jackson's contention originates in the notion that if an accused cannot be found criminally responsible for the crime leading to a felony murder charge, that person cannot be held to answer for the associated homicide. Having considered both the nature of felony murder and the effect of the limitations statute, we find Jackson's contention meritless.
First, the predicate or threshold crime is statutorily distinct from the crime *1095 of felony murder. § 782.04, Fla. Stat. (1981). After a long history to the contrary, the Florida Supreme Court  albeit in a different factual context  held that the underlying felony is not necessarily an offense included within the felony murder charge and thus a defendant can be convicted of both the felony murder and the underlying felony. State v. Enmund, 476 So.2d 165 (Fla. 1985). Conviction, however, of the underlying felony is not a jurisdictional prerequisite to prosecution for felony murder. Indeed, the jury need not even be instructed on the elements of the underlying felony with the same particularity that would be required were that the primary crime charged, as long, of course, as the underlying felony is sufficiently developed to assure a fair trial. Brumbley v. State, 453 So.2d 381 (Fla. 1984); McCrae v. Wainwright, 422 So.2d 824 (Fla.), cert. denied, 461 U.S. 939, 103 S.Ct. 2112, 77 L.Ed.2d 315 (1982); Robles v. State, 188 So.2d 789 (Fla. 1966).
Although our courts apparently have not faced the precise issue Jackson has raised, courts in California and New York have specifically stated that the underlying felony and the murder are independent charges; consequently, the running of the statute of limitations on the underlying felony is irrelevant to a prosecution for felony murder, a crime for which there is no statute of limitation. People v. Superior Court (Turner), 230 Cal. Rptr. 36 (Cal.Ct.App. 1986); People v. Harvin, 46 Misc.2d 417, 259 N.Y.S.2d 883 (N.Y. Sup. Ct. 1965). The mere preclusion of the state's capacity to prosecute the subordinate crime because of a time limitation has no effect upon the question of whether such crime was committed.
Jackson perceives Gurganus v. State, 451 So.2d 817 (Fla. 1984), as an impediment to the state's pursuit of the felony murder charges. He draws too much from Gurganus. Gurganus speaks to the state's burden to establish the elements of the "underlying felony" in seeking to prove a felony murder. In the matter before us, the state did meet its burden; the evidence disclosing that Jackson engaged in attempted armed robbery, for which he could not be punished, satisfied the factual elements from which the jury determined that he was criminally liable for the independently existing crime of felony murder.
Furthermore, our courts have long held that a statute limiting the time within which judicial action may be effectively invoked affects only the right to relief or, as we conclude here, the imposition of a penalty. See Walter Denson & Son v. Nelson, 88 So.2d 120, 122 (Fla. 1956) (statutes of limitation ordinarily apply to the remedy and not the substantive claim); see also Henry v. Halifax Hospital District, 368 So.2d 432, 433 (Fla. 1st DCA 1979); Martz v. Riskamm, 144 So.2d 83, 87-88 (Fla. 1st DCA 1962). Consistent with that principle, section 775.15(2)(b) does not obliterate Jackson's crime of attempted armed robbery but simply forecloses penalizing its commission. In spite of the fact that the doctrine we follow stems from civil actions, we find no reason to reject its application in a criminal prosecution. In short, the sophistry urged upon us by Jackson falls short of overcoming the narrow effect of section 775.15(2)(b). The duration of Jackson's success in evading capture shields him only from punishment for the attempted armed robbery and not from the exposition of those facts essential to convictions for the felony murders.
The final point upon which we comment involves Jackson's claim that the trial court's unwillingness to grant his request for an instruction that the state's witness, Paulette Sewell, was an accomplice, and hence an accessory after the fact within the meaning of section 777.03, Florida Statutes (1981), was erroneous. Jackson contends that the instruction he sought would have enabled him to attack Sewell's credibility. We find no error in the trial court's declining to grant the instruction.
We do not gainsay that evidence can be extracted from the record supporting the belief that Sewell, at least after the crime's commission, possessed knowledge of Jackson's involvement. She housed him that night, at Jackson's behest she placed a telephone call to his then dead associate, *1096 and she lied to the police  acts indicating a purpose to assist Jackson in avoiding detection in violation of section 777.03. See Gawronski v. State, 444 So.2d 490 (Fla. 2d DCA 1984). Nevertheless, the mere fact that Sewell was potentially liable for violating section 777.03 is of no consequence in assessing whether Jackson was improperly denied the instruction. Jackson has offered nothing to bridge the gap between his theory of entitlement to the instruction and the total absence of any authority, or significant logic, lending it credence. In any case, we are persuaded that even if the trial court's ruling were mistaken, the error would be harmless in the light of the totality of evidence implicating Jackson in the crimes.
Affirmed.
ERVIN and WIGGINTON, JJ., concur.