[No. 56333–1. En Banc. November 21, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. RANDALL JAY DENNISON, *Petitioner*.

610

612

*Ramirez & Ramirez,* by *Joseph A. Ramirez,* for petitioner.

*Andrew K. Miller, Prosecuting Attorney,* and *Robert Ingvalson, Deputy,* for respondent.

CALLOW, C.J.—Randall Dennison was convicted of first degree felony murder. The Court of Appeals affirmed. *State v. Dennison,* 54 Wn. App. 577, 774 P.2d 1237 (1989). Dennison seeks review of whether the trial court erroneously: denied his request for jury instructions regarding self–defense, proximate cause, and lesser included offenses; denied his affidavit of prejudice; did not find prosecutorial misconduct; denied the relevancy of the statute of limitations of the underlying felony of burglary; and wrongfully allowed the prosecutor in his opening statement to mention the police investigation of Dennison for possible prior crimes. We affirm.

I
FACTS

On January 23, 1982, while burglarizing the home of Robert Yates, Randall Dennison killed Daniel Stracner. Stracner lived in an apartment above the home of Yates, a known drug dealer. Dennison had been tipped off that Yates had a supply of marijuana in his bedroom.

After driving by Yates' home and not seeing anyone there, Dennison parked his car at a nearby convenience store and telephoned Yates; no one answered the phone. Dennison walked to Yates' house and knocked on the door. After no one answered, he kicked open the door and went to the bedroom looking for the marijuana. Dennison carried

a pillowcase, a grocery sack, a hammer, and was armed with a gun.

Shortly after Dennison entered Yates' home, Stracner, also armed with a gun, appeared in the bedroom doorway. According to Dennison, Dennison grabbed Stracner's hand which was on the gun and pushed it into the air. Dennison held his own gun in Stracner's stomach. Dennison asserted that he backed Stracner out of the house and onto the porch. Dennison testified that he told Stracner that he had not taken anything, that it was all over, that he did not intend to hurt Stracner, and that he just wanted to leave. According to Dennison, Stracner said "okay." Dennison then pointed his gun down at the ground and released his grip on Stracner's hand which held the gun. After Dennison's hand was released, Dennison claims, Stracner shot at him. In response, Dennison claims he fired at Stracner, resulting in Stracner being knocked onto a couch. Stracner assertedly aimed at Dennison again and Dennison fired more shots. It was subsequently determined that Stracner's gun had in fact been fired and had jammed after the first shot. Dennison fled the scene leaving the pillowcase and burglary tools at Yates' home. Stracner died of the gunshot wounds.

A few weeks later, the police noticed the resemblance between the pillowcase left at the crime scene and a pillowcase in a picture taken at Dennison's house during a police investigation of a different crime. When the police interviewed Dennison, he denied any involvement in Stracner's murder. Approximately 5 years later, Dennison's girl friend told the police that Dennison had admitted to her that he killed Stracner. Dennison was charged with first degree felony murder.

Prior to the trial, Dennison denied shooting Stracner and denied acting in self–defense. However, during the trial he admitted to killing Stracner and claimed self–defense. The trial judge denied Dennison's request for a jury instruction on self–defense, proximate cause, and lesser included offenses. After a 5–day trial, the jury found Dennison guilty

of first degree felony murder committed in the furtherance of first degree burglary.

## II
### DID THE TRIAL COURT ERRONEOUSLY DENY DENNISON'S REQUESTED INSTRUCTION ON SELF–DEFENSE?

Dennison contends the trial court erred in refusing to give his proposed instruction regarding self–defense.[1] Citing *State v. Craig*, 82 Wn.2d 777, 514 P.2d 151 (1973) and *State v. Wilson*, 26 Wn.2d 468, 174 P.2d 553 (1946), Dennison argues that at some point "withdrawal in the commission of a felony" is achievable, that he withdrew, and that a self–defense instruction was therefore appropriate. Dennison confuses two concepts of withdrawal: (1) withdrawal from a felony, and (2) withdrawal from aggressive action to revive one's right of self–defense.

A. Withdrawal from a felony.

A person is guilty of first degree felony murder when:

(c) He commits or attempts to commit the crime of either (1) robbery, in the first or second degree, (2) rape in the first or second degree, (3) *burglary in the first degree*, (4) arson in the first degree, or (5) kidnapping, in the first or second degree, and; *in the course of and in furtherance of such crime or in immediate flight therefrom*, he, or another participant, causes the death of a person other than one of the participants . . ..

(Italics ours.) Former RCW 9A.32.030(1).[2]

---

[1]Dennison's requested instruction was as follows:

"It is a defense to a charge of Murder that the homicide was justifiable as defined in this Instruction.

"Homicide is justifiable when committed in the lawful defense of the slayer when the slayer reasonably believes that the person slain intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished.

"The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer at the time of the incident.

"The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable." Dennison's proposed instruction 10; Clerk's Papers, at 44.

[2]Statutory defenses to the felony murder statute are as follows: "[E]xcept that in any prosecution under this subdivision (1)(c) in which the defendant was not

In first degree felony murder, the premeditation[3] or extreme indifference to human life[4] required in other sections of the first degree murder statute are substituted for by the circumstances specific to the felonies enumerated in the felony murder statute. If a death occurs in the attempt, commission of, or fleeing from one of the enumerated crimes, first or second degree robbery, first or second degree rape, first degree burglary, first degree arson, and first or second degree kidnapping, it is unnecessary to prove that the person who kills another did so with malice, design or premeditation. *See Craig*, 82 Wn.2d at 781.

Circumstances common to each of these enumerated felonies are the threatened use of force and the significant prospect of violence during the attempted felony. The felon's self–determined conduct inherently enhances the risk of death to others. The felon willingly or intentionally employs dangerous means to accomplish his or her criminal objective. Consonant with the felon's decision to use force and risk death to others is the harsh result of the felony murder statute. As stated, "[t]he purpose of the felony murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for the

the only participant in the underlying crime, if established by the defendant by a preponderance of the evidence, it is a defense that the defendant:

"(i) Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and

"(ii) Was not armed with a deadly weapon, or any instrument, article, or substance readily capable of causing death or serious physical injury; and

"(iii) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and

"(iv) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." Former RCW 9A.32.030(1)(c).

[3]Former RCW 9A.32.030(1)(a) states in part:

"With a premeditated intent to cause the death of another person, he causes the death of such person . . .".

[4]Former RCW 9A.32.030(1)(b) states in part:

"Under circumstances manifesting an extreme indifference to human life, he engages in conduct which creates a grave risk of death to any person . . .".

killings they commit." *State v. Leech,* 114 Wn.2d 700, 708, 790 P.2d 160 (1990). If a felon in the course of and in furtherance of one of the enumerated crimes, or in immediate flight therefrom, causes the death of someone other than one of the participants, the felon is accountable for any resultant death within the limitations of the statute. *See* RCW 9A.32.030.

■■ Because Washington's felony murder statute clearly holds felons strictly responsible for any deaths occurring under the conditions specified by the statute, the issue is whether Dennison's actions fall within the statute. As the Court of Appeals noted, for the purpose of felony murder, ""the burglary is deemed to be in progress after the break and entry when defendant is still on the premises or when the defendant is fleeing from the scene."'" *State v. Dennison,* 54 Wn. App. at 580 (quoting *State v. Dudrey,* 30 Wn. App. 447, 453, 635 P.2d 750 (1981), *review denied,* 96 Wn.2d 1026 (1982) (quoting 2 C. Torcia, *Wharton on Criminal Law* § 148 (14th ed. 1979))). Hence, even while Dennison was fleeing the burglary scene, the burglary was still in progress.

According to the record, Dennison unlawfully entered a house, was armed with a weapon, and was attempting to flee when the gunfire ensued resulting in Stracner's death. Regardless of Dennison's claim that he pointed his gun to the ground or told Stracner that all he wanted to do was leave, Dennison was still armed, still engaged in the activity of the burglary and was fleeing therefrom. Fleeing from a burglary is not the same as withdrawing from the burglary. Because Dennison admits that he was in the process of fleeing the scene of the felony, meaning the burglary was still in progress, Dennison's factual scenario falls squarely within the first degree felony murder statute. Since the statutory exceptions to felony murder do not apply, Dennison must be held strictly responsible for the death caused while fleeing from the first degree burglary. The proposed self-defense instruction was properly refused.

B. <u>Withdrawing from being the aggressor reviving self–defense.</u>

Citing *State v. Craig,* 82 Wn.2d 777, 514 P.2d 151 (1973) and *State v. Wilson,* 26 Wn.2d 468, 174 P.2d 553 (1946), Dennison argues that he withdrew from being the aggressor; thus, when Stracner used "unlawful force," Dennison's right to self–defense was revived. Dennison also characterizes his crime as a property crime and argues that during the commission of a property crime, one does not lose all rights to self–defense.

Dennison mischaracterizes his crime. He was armed with a lethal weapon while breaking into a house—not a simple property crime. As stated, although Dennison was attempting to flee the scene when the gunfire ensued, by definition, the burglary was still in progress. *See Dudrey,* 30 Wn. App. at 453. Essentially, Dennison asks us to decide whether a felon's right to self–defense can be revived *during the commission of a felony.*

■ *Craig,* 82 Wn.2d at 783, held:

> It is the rule that one who was the aggressor or who provoked the altercation in which he killed the other person engaged in the conflict, cannot successfully invoke the right of self–defense to justify or excuse the homicide, unless he in good faith had first withdrawn from the combat at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting, or intended to desist, from further aggressive action.

As *Craig* notes, Washington has adopted the revival theory of self–defense. *See* Annot., *Comment Note: Withdrawal, After Provocation of Conflict, as Reviving Right of Self–Defense,* 55 A.L.R.3d 1000 (1974). *Craig,* however, specifically declined to decide whether self–defense could be revived during felony murder, nor do we need to decide that issue in this case. *See Craig,* 82 Wn.2d at 784. Even if we decided this issue, the result would be the same. In *Bellcourt v. State,* 390 N.W.2d 269 (Minn. 1986), the court reasoned that:

> case law from other jurisdictions makes clear that an aggressor has the duty to employ all means in his power to avert the

necessity of killing, and before his right to self–defense may be revived, he must clearly manifest a good–faith intention to withdraw from the affray and must remove any just apprehension or fear the original victim may be experiencing.

*Bellcourt,* 390 N.W.2d at 272 (citing *Melchior v. Jago,* 723 F.2d 486, 493 (6th Cir. 1983), *cert. denied,* 466 U.S. 952 (1984)). *Bellcourt* found that a self–defense instruction would be justified only if a reasonable juror could find that defendant had withdrawn from the confrontation. *Bellcourt* reasoned that if the defendant had truly intended to withdraw from the robbery and communicate that withdrawal to his victim, "he would have either released the gun, said something to the effect of 'I give up,' or both." *Bellcourt,* 390 N.W.2d at 272. *Bellcourt* held that the defendant had not withdrawn from the crime and an instruction on self–defense would have been improper. *Bellcourt,* 390 N.W.2d at 273.

Similarly, if Dennison had truly intended to withdraw from the burglary and communicated his withdrawal to the decedent, he would have dropped his gun or surrendered. Because Dennison still had his gun, although pointed to the ground, this action did not clearly manifest a good faith intention to withdraw from the burglary or remove the decedent's fear. The trial court properly refused Dennison's proposed self–defense instruction.

## III
### Did the Trial Court Erroneously Deny Dennison's Affidavit of Prejudice?

Dennison argues that both his pro se affidavit of prejudice, filed on October 9, 1987, and his trial counsel's affidavit of prejudice, filed on December 2, 1987, were filed before the trial judge made discretionary rulings.[5] Dennison

---

[5]Dennison erroneously contends that *State v. Guajardo,* 50 Wn. App. 16, 746 P.2d 1231 (1987), *review denied,* 110 Wn.2d 1018 (1988), is on point. In *Guajardo,* the trial court's denial of an affidavit of prejudice was reversed because the judge had not made a discretionary ruling. The trial judge had found a ruling of a previous judge in the same case controlling; hence, no discretion was exercised. *Guajardo,* 50 Wn. App. at 21. Moreover, contrary to Dennison's claim, the

argues that even if a discretionary ruling had been made, the trial judge "lulled" Dennison into believing that he would not be the trial judge. Finally, Dennison argues that his trial counsel had an independent right to file an affidavit of prejudice. All three contentions are without merit.

Affidavits of prejudice are governed by RCW 4.12-.040[6] and .050.[7] RCW 4.12.040 is a mandatory, nondiscretionary rule allowing a party in a superior court proceeding the right to one change of judge upon the timely filing of an affidavit of prejudice under RCW 4.12.050. *State v. Hansen,* 107 Wn.2d 331, 333, 728 P.2d 593 (1986); *Marine Power & Equip. Co. v. Department of Transp.,* 102 Wn.2d 457, 461, 687 P.2d 202 (1984); *State v. Guajardo,* 50 Wn. App. 16, 19, 746 P.2d 1231 (1987), *review denied,* 110 Wn.2d 1018 (1988). To be timely filed this affidavit of prejudice must be filed before the trial judge has been called upon to make a ruling involving the discretionary powers of the judge. *State v. Espinoza,* 112 Wn.2d 819, 823, 774 P.2d 1177 (1989) (citing *State v. Dixon,* 74 Wn.2d 700, 702–03,

---

appointment of an attorney was not at issue. In a colloquy between an attorney and the judge about the foolishness of meeting every week, the attorney made a statement that she would be ready to argue the case next week. The judge responded, "you're appointed." *Guajardo,* 50 Wn. App. at 20. Clearly, the appointment of the attorney was not at issue because the case was not heard the next week but at the previously appointed date.

[6]RCW 4.12.040 provides in part:

"(1) No judge of a superior court . . . shall sit to hear or try any action or proceeding when it shall be established . . . that said judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause."

[7]RCW 4.12.050 provides in part:

"Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge: *Provided,* That such motion and affidavit is filed and called to the attention of the judge before he shall have made any ruling whatsoever in the case . . . And provided further, That no party or attorney shall be permitted to make more than one such application in any action or proceeding under this section and RCW 4.12.040."

446 P.2d 329 (1968)). The effect of these statutes has been summarized as follows:

> Under these statutes and under our decisions a party litigant is entitled, as a matter of right, to a change of judges upon the timely filing of a motion and affidavit of prejudice against a judge about to hear his cause or any substantial portion thereof on the merits. Such a motion and affidavit seasonably filed presents no question of fact or discretion. Prejudice is deemed to be established by the affidavit and the judge to whom it is directed is divested of authority to proceed further into the merits of the action.

*LaMon v. Butler,* 112 Wn.2d 193, 201–02, 770 P.2d 1027 (quoting *Dixon,* 74 Wn.2d at 702), *cert. denied,* 110 S. Ct. 61 (1989). Examples of rulings that involve the exercise of the trial court's discretion are: (1) the granting or denying of a continuance;[8] and (2) the valid waiver of counsel.[9]

According to the record, the trial judge made multiple discretionary rulings prior to the date when Dennison filed his affidavit of prejudice, October 9, 1987. On September 4, 1987, Dennison's counsel advised the court that Dennison wished to represent himself and waive his right to a trial by jury. On September 8, 1987, Dennison elected to represent himself and the judge allowed the retained counsel to withdraw. On September 11, 1987, the trial judge granted a motion to continue the trial date until October 26, 1987.[10] Clearly, the trial court made several discretionary rulings prior to the filing of Dennison's affidavit of prejudice. Dennison's affidavit of prejudice was untimely filed.

---

[8]*Espinoza,* 112 Wn.2d at 823 (grant or denial of a continuance is a discretionary ruling) (citing *State v. Guajardo,* 50 Wn. App. 16, 19, 746 P.2d 1231 (1987), *review denied,* 110 Wn.2d 1018 (1988)).

[9]*State v. Chavis,* 31 Wn. App. 784, 787, 644 P.2d 1202 (1982) (whether a valid waiver of counsel exists is within the discretion of the trial judge (citing *State v. Kolocotronis,* 73 Wn.2d 92, 102, 436 P.2d 774 (1968) and *State v. Fritz,* 21 Wn. App. 354, 361, 585 P.2d 173, 98 A.L.R.3d 1 (1978)).

[10]As the Court of Appeals noted, although the parties stipulated to the continuance, the trial court in its discretion decided whether to grant or deny the continuance. *See* CrR 3.3(h)(1).

In addition Dennison argues that, in any event, he was "lulled" into believing that Judge Staples would not be the judge at trial.[11] Dennison argues that any possible exercise of discretion took place after the trial judge had informed Dennison that he would not be the trial judge.

The trial judge remarked during the September 4 hearing that he "undoubtedly" would not be the trial judge. The trial judge was trying to keep the proper matters at issue before the hearing and was refusing to hear Dennison's substantive motions. Moreover, the judge's comment came *after* Dennison already had called upon the trial judge to make a discretionary ruling regarding the waiver of counsel. Once accepting the trial judge to hear his waiver of counsel argument, Dennison cannot later claim that he was deceived by the same trial judge into believing he would not make a discretionary ruling. It was unreasonable for Dennison to take the judge's comments as a guarantee that he would not be the trial judge.

Finally, Dennison contends that his trial counsel, who was retained after the initial hearings when Dennison was pro se, had an independent right to file an affidavit of prejudice. Dennison argues that the right to one change of judge belongs to both a "party *or* attorney." RCW 4.12.050. *State ex rel. Sheehan v. Reynolds,* 111 Wash. 281, 190 P. 321 (1920) answers this issue.[12] In construing the affidavit of prejudice statute, *Reynolds* held that the Legislature's intent was "not to permit the attorney to have a change of judge after the party to the action had once exercised the

---

[11]At the first hearing, the defendant wanted to discuss the marital privilege with the judge. The trial judge finally stated: "Well, you see, I'm not able—that's what I'm trying to tell you. I cannot assist you in making judgments on these matters. In fact, I undoubtedly will not even be the judge, so it won't do you any good to urge these points on me. I'm just trying to explain to you what difficulty you're going to have urging these points without a lawyer, you see." Report of Proceedings, at 41–43 (Sept. 4, 1987).

[12]*Reynolds* was decided under Remington's 1915 Code § 209–1 and § 209–2. These statutes have substantially the same language as RCW 4.12.040 and RCW 4.12.050.

right given by the statute." *Reynolds,* 111 Wash. at 286; *see also* 14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice* § 50, at 121 (1986) (once *either* the party or the attorney has made an application for change of judge, neither may subsequently do so; there must be but one application in any one proceeding). We hold that once Dennison's affidavit of prejudice was filed and appropriately rejected, his attorney was not allowed to resubmit one.

## IV

### WAS THE PROSECUTOR'S COMMENT DURING CLOSING ARGUMENT, APOLOGIZING TO THE DECEDENT'S MOTHER FOR MISPRONOUNCING HER SON'S NAME, MISCONDUCT AND GROUNDS FOR REVERSAL?

Dennison contends that the prosecutor's comment[13] in closing argument was an improper appeal to the jury's compassion and grounds for reversal under *State v. Belgarde,* 110 Wn.2d 504, 755 P.2d 174 (1988).[14] Dennison argues that the prosecutor's comment narrowed "down the identification by gender and attendance throughout the 5-day trial as to who the decedent's mother might be." Dennison further argues that an objection at trial would have only drawn further attention to the improper remark.

■ This court has held that if a defendant neither objects to a portion of the closing argument nor requests a

---

[13]The prosecutor's comments in his closing argument were as follows: "So, members of the jury, I'm a little bit pressed to continue with much of a closing argument because, as I said there's really no issue. It's very clear regarding any set of circumstances that have been presented in this trial. But I feel I have to continue because it's unfair to Mr. Stracner and to Mr. Stracner's memory. *And I say Mr. Stracner and I apologize to his mother, who's been listening to me mispronounce it through the whole trial. . . .*" Report of Proceedings, at 757–58.

[14]In *Belgarde,* the defendant testified that he was affiliated with the American Indian Movement (AIM). During closing argument, the prosecutors called AIM "a deadly group of madmen" and "butchers, that killed indiscriminately". *Belgarde,* 110 Wn.2d at 506–07. The court found these comments so flagrantly appealing to passion and prejudice that it was necessary to reverse because curative instructions could not have overcome the harm. *Belgarde,* 110 Wn.2d at 507.

curative instruction, any objection to the claimed miscon-
duct is waived unless the "prosecutorial misconduct is so
flagrant and ill intentioned that no curative instruction
could have obviated the prejudice engendered by the mis-
conduct." *Belgarde,* 110 Wn.2d at 507 (citing *State v. Dun-
away,* 109 Wn.2d 207, 221, 743 P.2d 1237, 749 P.2d 160
(1987); *State v. Charlton,* 90 Wn.2d 657, 661, 585 P.2d 142
(1978); *State v. Case,* 49 Wn.2d 66, 74–75, 298 P.2d 500
(1956); *State v. Claflin,* 38 Wn. App. 847, 849 n.2, 690 P.2d
1186 (1984), *review denied,* 103 Wn.2d 1014 (1985)). The
question to be asked is "whether there was a 'substantial
likelihood' the prosecutor's comments affected the verdict."
*Belgarde,* 110 Wn.2d at 508 (citing *State v. Reed,* 102
Wn.2d 140, 147–48, 684 P.2d 699 (1984); *State v. Charlton,*
*supra* at 664).

We do not find that the prosecutor's comment, although
ill advised, constituted misconduct. It appears inadvertent
and unintentional. In any case Dennison did not object to
the prosecutor's comment during the trial, and the com-
ment was not so flagrant or ill intentioned that a curative
instruction would not have cured any prejudicial effect.
There was no substantial likelihood the comment affected
the verdict. In marked contrast to the *Belgarde* prosecu-
tor's repetitive comments about "butchers" and "deadly
madmen," the prosecutor's comments in the instant case
were brief and focused on apologizing for mispronouncing
the victim's name.

## V
### SHOULD THE TRIAL COURT HAVE GIVEN DENNISON'S
### PROPOSED JURY INSTRUCTION ON PROXIMATE CAUSE?

Dennison contends that the trial court erroneously failed
to give his instruction on causation. The requested instruc-
tion stated:

> To constitute Murder, there must be a causal connection
> between the death of a human being and the criminal conduct
> of a Defendant, so that the act was a proximate cause of the
> resulting death.

The term "proximate cause" means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which the death would not have happened.

Defendant's instruction 12. Dennison argues that the decedent's felonious acts superseded Dennison's acts when the decedent overreacted under circumstances not reasonably foreseeable. Dennison confuses the two elements of proximate cause: cause in fact and legal causation.

Dennison's instruction 12 was taken verbatim from Washington Pattern Instructions Criminal (WPIC) 25.02. This definition of proximate cause is adapted from Washington Pattern Instruction (WPI) 15.01. WPIC 25.02 comment.[15] Previously, we specifically pointed out that WPI 15.01 was an example of the imprecise use of the term "proximate cause" to encompass "cause in fact" and "legal causation" alone or in combination. *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985) (proximate cause consists of two elements: cause in fact and legal causation). We noted that WPI 15.01 refers to proximate cause in its factual context. We further noted that WPI 15.01 pertains to "cause in fact." *Hartley*, 103 Wn.2d at 778 (citing *King v. Seattle*, 84 Wn.2d 239, 249, 525 P.2d 228 (1974)). Because WPIC 25.02 is patterned after WPI 15.01, WPIC 25.02 also pertains to cause in fact, and not to legal causation.[16]

"Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Hartley*, 103 Wn.2d at 778 (citing *King v. Seattle*, 84 Wn.2d at 249). Cause in fact is generally left to the jury. *Hartley*, 103 Wn.2d at 778. When reasonable minds could reach but one conclusion, however, questions of fact may be determined as a matter of law. *Hartley*, 103 Wn.2d at 775 (citing *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299

---

[15] One commentator notes that as to cause in fact, tort and criminal situations are exactly alike. 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 3.12(c), at 397 n.31 (1986).

[16] *See State v. Leech*, 114 Wn.2d 700, 711, 790 P.2d 160 (1990) (foreseeability is not an element of "proximate cause" (cause in fact) under WPIC 25.01).

(1975); *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963)).

In the instant case, but for Dennison kicking open Yates' door and committing armed burglary, the decedent would not have entered Yates' house and been killed. Dennison does not argue that the burglary was completed when the decedent was killed; in any case, the death clearly occurred while the burglary was still in progress. *See State v. Dudrey,* 30 Wn. App. 447, 453, 635 P.2d 750 (1981), *review denied,* 96 Wn.2d 1026 (1982). Hence, there was no issue of fact for the jury to decide. The trial court correctly refused to give the instruction because reasonable minds could only have reached the same conclusion.

Further, Dennison's proposed instruction does not encompass the foreseeability element for which he argues, nor is foreseeability required under the facts of this case. *See Leech,* 114 Wn.2d at 705.

## VI
### WAS THE FELONY MURDER CHARGE BARRED BECAUSE THE STATUTE OF LIMITATIONS OF THE UNDERLYING CRIME OF BURGLARY HAD RUN?

Dennison argues that his pretrial motion to dismiss the felony murder charge should have been granted because one of the elements of the offense, specifically first degree burglary, was barred by the statute of limitations.[17] Dennison cites no authority for this contention.

Neither RCW 9A.04.080, which sets out various statutes of limitations, nor Washington case law addresses whether the running of the underlying crime's statute of limitations bars a felony murder charge. We agree with the Court of Appeals that other jurisdictions have held that the

---

[17]Dennison appears to have abandoned his claim that because felony murder was not listed under RCW 9A.04.080, it falls under the residual clause of that provision, 3 years. Felony murder is not a separate crime from murder; it is an alternative means of committing murder. *State v. Powell,* 34 Wn. App. 791, 664 P.2d 1 (1983). Hence, like other murder charges, felony murder prosecution can be commenced at any period after the commission of the crime. *See* RCW 9A.04.080.

running of the statute of limitations on the underlying felony is irrelevant to a prosecution for felony murder. *Dennison,* 54 Wn. App. at 579 (citing *People v. Sellers,* 203 Cal. App. 3d 1042, 250 Cal. Rptr. 345, 351 n.15 (1988); *Jackson v. State,* 513 So. 2d 1093 (Fla. Dist. Ct. App. 1987); *People v. Harvin,* 46 Misc. 2d 417, 259 N.Y.S.2d 883 (1965)). *See also* 4 C. Torcia, *Wharton's Criminal Procedure* § 545, at 32 (12th ed. 1974) (an instruction in felony murder may be given even though a prosecution for the underlying felony would be barred by the pertinent statute of limitations). Complying with the underlying felony's statute of limitations is not a jurisdictional prerequisite to prosecuting someone for felony murder.

## VII
### DID THE TRIAL COURT ERRONEOUSLY DENY DENNISON'S REQUEST FOR JURY INSTRUCTIONS ON SECOND DEGREE MURDER, FIRST AND SECOND DEGREE MANSLAUGHTER?

Dennison contends that the trial court should have instructed the jury on the "lesser included offenses" of second degree murder and first and second degree manslaughter. Dennison argues that the jury could have found him reckless or criminally negligent in creating the confrontation, a finding of the lesser offense.

 Dennison misunderstands the law on instruction of lesser included offenses. As stated in *Jackson,* 112 Wn.2d 867, 774 P.2d 1211 (1989),

[A] defendant is entitled to an instruction on a lesser included offense if two conditions are met. First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed."

*Jackson,* at 877 (quoting *State v. Workman,* 90 Wn.2d 443, 447–48, 548 P.2d 382 (1978)). *See also* 4 C. Torcia, *Wharton's Criminal Procedure* § 544, at 26–27 (1976 & Supp. 1989) ("[a]n offense qualifies as a lesser included offense only if the elements of the included offense are fewer in number than elements of the greater offense, and if the greater offense cannot be committed without also committing the lesser offense").

██ ██ Dennison does not meet the first condition. The statutory definitions of first and second degree manslaughter require proof of specific mental elements that are not required to prove first degree felony murder. *State v. Frazier,* 99 Wn.2d 180, 191, 661 P.2d 126 (1983); *State v. Roybal,* 82 Wn.2d 577, 583, 512 P.2d 718 (1973); RCW 9A.32.060, .070. Likewise, second degree murder, notwithstanding second degree felony murder, requires the specific element of intent to murder. Again, because intent is not required in felony murder, the first condition of *Workman* is not met. Dennison's assumption that second degree murder and first and second degree manslaughter are lesser included offenses of felony murder is incorrect. The trial court properly refused to give the proposed jury instructions.

## VIII
### WAS THE TRIAL COURT'S ADMISSION OF A POLICEMAN'S EXPLANATION THAT PHOTOGRAPHS WERE TAKEN AT DENNISON'S HOME WHILE INVESTIGATING A DIFFERENT CRIME VIOLATIVE OF ER 404(b)?

Dennison contends that the State, in its opening statement, should not have mentioned that the police had investigated Dennison a month prior to the homicide regarding a different crime.[18] To support this argument, Dennison relies on *State v. Newton,* 109 Wn.2d 69, 743 P.2d 254 (1987). He argues that evidence of collateral crimes violates ER 404 and ER 609. Both ER 609 and *Newton* are inapplicable because they pertain to impeaching a witness with evidence of prior crimes. Impeachment was not an issue in this case.

██ ER 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for

---

[18]A month prior to the decedent's death, the police took photographs in Dennison's home of possible items from a burglary. A pillowcase in one photograph was similar to a pillowcase found at the scene of the decedent's death. Dennison conceded the relevance and admission of the photograph; however, Dennison sought to prohibit the State from explaining how and why the picture was taken.

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

To admit evidence of other crimes, wrongs, or acts, the trial judge is obligated to: (1) identify the purpose for which the evidence is sought to be introduced; and (2) determine whether evidence is relevant to prove an essential element of the crime charged. *State v. Brown*, 113 Wn.2d 520, 527, 782 P.2d 1013, 787 P.2d 906 (1989) (citing *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986); *State v. Saltarelli*, 98 Wn.2d 358, 655 P.2d 697 (1982); ER 402). To be relevant, the purpose for admitting the evidence must be of consequence to the outcome of the action and must make the existence of the identified fact more probable. *Brown*, at 527 (citing *Smith*, at 776; *Saltarelli*, at 362–63). The trial judge must weigh on the record the probative value of the relevant evidence against its prejudicial effect. *Brown*, at 527 (citing *State v. Jackson*, 102 Wn.2d 689, 694, 689 P.2d 76 (1984)). "Proper evidence will not be excluded because it may also tend to show that the accused has committed another crime, unrelated to the one with which he is charged. The test is whether the questioned evidence tends to establish motive, intent . . . *identity* or *presence.*" *State v. Boggs*, 80 Wn.2d 427, 433, 495 P.2d 321 (1972).

The State initially was not aware of the defense which would be presented. The trial judge properly found that identity was an essential ingredient of the crime that the State was trying to prove. The similarities between the pillowcases were relevant evidence to link Dennison to the alleged murder. The trial judge noted the potential probative value of allowing the evidence against the prejudicial effect.[19] The trial court's decision was not manifestly unreasonable and it did not abuse its discretion.

---

[19]The court allowed the photograph and the police explanation to be admitted reasoning: "the jury is going to know perfectly well that police weren't there visiting him for social purposes when they took a picture of the pillowcase . . . the statement of circumstances isn't any worse than the implication is going to be, anyway." Report of Proceedings, at 151–52.

## IX
## DOES CUMULATIVE ERROR NECESSITATE RETRIAL?

Finally, Dennison claims, for the first time, cumulative error. He neither briefs the issue nor cites to authority. The issue will not be reviewed. *See Smith v. King,* 106 Wn.2d 443, 722 P.2d 796 (1986).

The first degree felony murder conviction is affirmed.

BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and GUY, JJ., concur.

UTTER, J. (dissenting)—I dissent to part II A of the majority opinion. The majority asserts that the self–defense instruction was properly refused because self–defense is not one of the statutory defenses listed in former RCW 9A.32-.030(1)(c). Without explicitly saying so, the majority holds that the statutory defenses specifically enumerated in the felony murder statute are exclusive. This holding is incorrect.

The Washington Legislature has specifically provided for a statutory claim of self–defense against any homicide charge.[20] Homicide includes any murder.[21] Felony murder is not a separate crime from murder; it is but one way of committing the crime of murder. *State v. Powell,* 34 Wn. App. 791, 794, 664 P.2d 1 (1983). Therefore felony murder is a homicide and self–defense is applicable.

The more difficult question is whether Dennison was entitled to a self–defense instruction on the facts of this

---

[20] "Homicide is also justifiable when committed either:

"(1) In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother, or sister, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or

"(2) In the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or upon or in a dwelling, or other place of abode, in which he is." RCW 9A.16.050.

[21] "Homicide is the killing of a human being . . . and is either (1) murder, (2) homicide by abuse, (3) manslaughter, (4) excusable homicide, or (5) justifiable homicide." RCW 9A.32.010.

case. The defense is available only if he in good faith withdrew in such a manner as to have clearly advised his adversary that he was in good faith desisting, or intending to desist, from further aggressive action. *State v. Craig*, 82 Wn.2d 777, 783, 514 P.2d 151 (1973). The trial court refused the instruction because, in its view, the fact that he held a gun in his hand precluded a jury from finding justifiable homicide.

The record reveals that the defendant was the aggressor when he attempted armed burglary. However, the decedent, Mr. Stracner, did not live at the home the defendant was burglarizing. Stracner was not a homeowner defending his own property when he armed himself and confronted the defendant. Nonetheless, Stracner had a right to defend himself when the defendant drew his gun.

Stracner's use of deadly force in self–defense would not be justified, however, if Dennison withdrew within the meaning of *Craig*. Under those circumstances Stracner's use of his gun would be unjustified and Dennison's right to self–defense would be revived. The record reflects that Dennison arguably withdrew from his initial aggression when he pointed his gun toward the ground, told the decedent he meant no harm and that he did not take any drugs, and released his grip from the decedent's gun. Whether those acts amounted to a withdrawal such that Dennison's shooting of Stracner was justifiable is a question for the jury to decide. *Rowe v. United States*, 164 U.S. 546, 557, 41 L. Ed. 547, 17 S. Ct. 172, 175 (1896).

To properly raise the issue of self–defense, there need be only some evidence admitted which tends to prove a killing was done in self–defense. *State v. McCullum*, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983). The State's argument that the defendant did not meet this burden because he did not withdraw from the felony is incorrect and confuses two distinctly different concepts of withdrawal. The first concept is whether the defendant withdrew from the felony sufficiently to terminate the felony murder. The second is whether the defendant withdrew from being the aggressor

sufficiently to revive the right of self-defense. 2 C. Torcia, *Wharton on Criminal Law* § 148 (14th ed. 1979); Annot., *What Constitutes Termination of Felony for Purpose of Felony-Murder Rule,* 58 A.L.R.3d 851 (1974). While it is true the defendant had not withdrawn from the felony, the issue under consideration in this case is whether he withdrew as the aggressor and revived his right of self-defense.

The Court of Appeals opinion is incorrect in its claim that self-defense is not available to the defendant as a matter of law. *State v. Dennison,* 54 Wn. App. 577, 582, 774 P.2d 1237 (1989). The Court of Appeals takes the position that the defendant can only claim self-defense where the self-defense negates the intent element of the crime. This is not a correct statement of the law. The court's reliance on *State v. Acosta,* 101 Wn.2d 612, 616, 683 P.2d 1069 (1984) to support its position is mistaken. *Acosta*'s discussion of self-defense as negating an element of the underlying crimes relates only to the allocation of the burden of proof. *Acosta,* at 616. The *Acosta* court was not concerned with whether the claim of self-defense was available, but only with who bore the burden of proving that claim. In this case, however, the allocation of the burden of proof in proving self-defense is not at issue. Instead, the issue here is whether the claim of self-defense is available.

To further support their intent analysis, the Court of Appeals quotes *People v. Burns,* 686 P.2d 1360, 1362 (Colo. Ct. App. 1983) for the proposition that

> [t]he felony murder statute requires only that the death of a person result in furtherance of the commission of a felony. Thus, the affirmative defense of self-defense may properly be raised only as it pertains to the underlying felony, and not to the resulting death.

*Dennison,* 54 Wn. App. at 582. The *Burns* court relies on a case in which the felony murder rule was abolished, and the quoted statement was used by that court to denounce the felony murder rule's lack of individual culpability for criminal responsibility. *See People v. Aaron,* 409 Mich. 672, 299

N.W.2d 304 (1980). *Aaron* cites no authority for the proposition that a person charged with felony murder is only allowed to raise self–defense as a defense to the mental element of the underlying crime. *Burns* cites no authority other than *Aaron*. 686 P.2d at 1362. The *Burns* court and the Court of Appeals, therefore, base their intent analysis on questionable authority.

The second foundation of the Court of Appeals analysis is that other jurisdictions uniformly deny the self–defense claim on the ground that self–defense is unavailable as a matter of law in felony murder prosecutions. They rely on the general rule that one who provokes an encounter as a result of which he finds it necessary to use deadly force to defend himself is guilty of unlawful homicide and cannot claim self–defense. After stating the general rule, however, the Court of Appeals fails to discuss the applicability of the revival exception to the general rule. The well–recognized exception to the rule is:

> Although a defendant has become the aggressor by provoking an encounter, if in good faith he withdraws from the affray and so informs his adversary, but the latter continues the conflict, the right to kill in self–defense is revived in the defendant.

2 C. Torcia, *Wharton on Criminal Law* § 135, at 157 (14th ed. 1979).

We adopted the revival theory of self–defense in *State v. Craig,* 82 Wn.2d 777, 783, 514 P.2d 151 (1973). In *Craig,* we wrote:

> It is the rule that one who was the aggressor or who provoked the altercation in which he killed the other person engaged in the conflict, cannot successfully invoke the right of self–defense to justify or excuse the homicide, *unless he in good faith had first withdrawn from the combat at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting, or intended to desist, from further aggressive action. . . .*

(Italics mine.) 82 Wn.2d at 783; *see also State v. Wilson,* 26 Wn.2d 468, 480, 174 P.2d 553 (1946); *State v. McConaghy,* 84 Wash. 168, 170, 146 P. 396 (1915).[22]

The United States Supreme Court has also recognized the revival theory of self–defense. In *Rowe v. United States, supra,* the accused kicked the deceased during an argument. The accused then backed away. The deceased pulled a knife and came at the accused, who then pulled a gun and shot the other man. The Court held that, if the jury believed the defendant intended to withdraw from the aggression, then he had a right to use self–defense to repel the knife attack. 164 U.S. at 557.[23] The rationale for the revival theory is that a person acting in self–defense may only use as much force as is necessary to defend himself from the perceived threat. This premise has support in our case law. *See State v. Hill,* 76 Wn.2d 557, 566, 458 P.2d 171 (1969); *State v. Brigham,* 52 Wn. App. 208, 210, 758 P.2d 559 (1988).

In *Brigham,* the defendant and the deceased were involved in a fight in which the deceased was initially the principle aggressor. The defendant then pulled a knife and stabbed the deceased. The Court of Appeals held that the defendant may have been initially justified in using force in self–defense. His use of the knife, however, was excessive force negating his right to a self–defense instruction. 52 Wn. App. at 210. In other words, the defendant's use of the knife was unjustified.

In this case, if the jury believed defendant's testimony, it could conclude that the deceased was not justified in shooting at the defendant. The record reflects that the

___

[22]In *McConaghy,* this court approved a jury instruction that read: "'An accused person who is an aggressor in an affray . . . cannot invoke the doctrine of self–defense or be justified in shooting to prevent injury, unless before such shooting, [he] in good faith sought and endeavored to withdraw from and abandon the conflict.'" 84 Wash. at 170–71.

[23]Numerous other states have also adopted the revival theory of self–defense. *See* Annot., *Comment Note: Withdrawal, After Provocation of Conflict, as Reviving Right of Self–Defense,* 55 A.L.R.3d 1000 (1974).

defendant presented evidence arguably showing that he withdrew from his initial aggression. He pointed his gun toward the ground, told the decedent he meant him no harm and that he did not take any drugs, and released his grip from the decedent's gun. Under those circumstances the defendant's right to self–defense was an issue the jury should have been able to consider.

RCW 9A.16.050 specifically makes self–defense a statutory defense to a charge of homicide. Felony murder is a homicide and therefore the statute is applicable. The trial court refused the self–defense instruction because, in its view, the fact that the defendant held the gun in his hand precluded a jury from finding justifiable homicide. The trial court erred in its refusal to instruct on the issue. The question of whether the defendant sufficiently withdrew from his initial aggression so as to make the homicide justifiable is a question for the jury to decide.

The case should be reversed and remanded for a new trial.

SMITH, J., concurs with UTTER, J.