66 F.3d 338
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Dennis L. FRITZ, Petitioner-Appellant,
v.
Ron CHAMPION; Attorney General of the State of Oklahoma,
Respondents-Appellees.
 No. 94-6327.
(D.C.No. CIV-92-2223-C)
 United States Court of Appeals, Tenth Circuit.
 Sept. 11, 1995.
 
 Before TACHA, LOGAN, and BRISCOE, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner Dennis Leon Fritz appeals from a district court order adopting, in its entirety, the magistrate judge's recommendation to deny his petition for habeas corpus pursuant to 28 U.S.C. 2254. Upon review of the state court record and consideration of the arguments advanced on this appeal, we affirm the denial of habeas relief for substantially the reasons stated in the magistrate judge's thorough and well-reasoned recommendation.
 
 
 3
 Petitioner was convicted in Oklahoma of first degree murder on complementary theories of deliberate-intent homicide and felony (rape) murder. See Okla. Stat. tit. 21, 701.7A & B. He was sentenced to life imprisonment. His conviction and sentence were affirmed on direct appeal, Fritz v. State, 811 P.2d 1353 (Okla.Crim.App.1991), and reaffirmed in state post-conviction proceedings. Petitioner then commenced this action seeking habeas relief on the following grounds:
 
 
 4
 (1) Insufficient evidence to support his conviction. Specifically, petitioner argues the state failed to prove he was physically present at the time and place of the murder.
 
 
 5
 (2) Loss of a meaningful appeal before the Oklahoma Court of Criminal Appeals through state counsel's misrepresentations and the court's consideration of record evidence not referenced in the parties' briefs. Specifically, petitioner argues the state misinformed the court when it stated petitioner had been seen at the nightclub where decedent had been working on the night of the murder.
 
 
 6
 (3) Denial of due process by the state charging petitioner with felony murder after the statute of limitations had expired on the underlying felony of rape. Specifically, petitioner argues he was denied due process when forced to defend against a charge that was not only barred by the statute of limitations, but also was stale.
 
 
 7
 (4) Denial of due process as a result of the state's delay in filing charges. Specifically, petitioner argues he was prejudiced by the delay because by the time he was charged, he could not recall where he was on the night the murder occurred.
 
 
 8
 (5) Denial of Sixth Amendment right to counsel by state's use of information obtained by a jailer during his conversations with petitioner.
 
 
 9
 (6) Numerous instances of prosecutorial misconduct, which resulted in denial of petitioner's Sixth Amendment right to counsel as well as due process rights. Specifically, petitioner enumerates the following instances of prosecutorial misconduct:
 
 
 10
 (a) Withholding of exculpatory videotaped confession of Ricky Simmons;
 
 
 11
 (b) Withholding of exculpatory statements of Andrea Cooper Hardcastle and Donna Marie Fisher Acree;
 
 
 12
 (c) Expanding the testimony of expert witnesses during closing arguments;
 
 
 13
 (d) Comments on facts not in evidence;
 
 
 14
 (e) Comments on credibility of petitioner and his counsel;
 
 
 15
 (f) Presenting false evidence concerning alleged plea negotiations.
 
 
 16
 (7) Denial of fair trial by trial court's refusal to give requested instruction regarding hair and body fluid comparisons.
 
 
 17
 (8) Denial of effective assistance of counsel at both the trial and on appeal. Specifically, petitioner contends trial counsel failed to seek suppression of the testimony of the jailer Mike Teeney. He also argues that trial counsel failed to procure witnesses who could impeach the testimony of James Harjo. Petitioner also contends both his trial counsel and appellate counsel failed to object to or recognize the trial court's abuse of discretion in denying the jury's request of a read back of the testimony of petitioner's hair expert.
 
 
 18
 (9) Cumulative constitutional errors by court and counsel denied petitioner a fair trial.
 
 
 19
 In our view, the magistrate judge's extensive treatment of the issues obviates the need for much further explication. However, there is one fundamental matter that may warrant specific discussion, namely the overall strength of the state's first-degree murder case against petitioner, which has been called into question directly, by petitioner's challenge to the sufficiency of the evidence placing him at the crime scene, and indirectly, insofar as it figures into the analysis of other claims of constitutional trial error.
 
 
 20
 Petitioner's defense at trial was essentially to concede the probable culpability of co-defendant Ron Williamson,[2] down play his personal relationship with Williamson, emphasize the lack of testimony placing him with either Williamson or the victim on the night of the murder, and argue that Williamson (or someone else) acted alone. While a number of witnesses, including petitioner himself, ultimately substantiated the state's claim that petitioner and Williamson were in fact frequent and close companions, the defense continued to rely on the significant point that no one had seen petitioner with Williamson or the victim on the night of the murder. If this were the extent of the evidentiary record, we would have to agree with petitioner that his conviction rested on a constitutionally inadequate case of guilt by association. But the state's circumstantial case against petitioner merely began with his relationship with co-defendant Williamson, it did not end there.
 
 
 21
 A number of facts regarding petitioner's peculiar behavior following the murder fit together to form a suggestive picture of his involvement. A neighbor recalled an early morning incident in petitioner's backyard around the time of the murder, in which petitioner and another man were spraying themselves with a hose despite winter temperatures. Instead of offering an innocent explanation of the incident, plaintiff simply denied it happened, placing his credibility (already undermined in a number of respects) in direct opposition to that of a witness with no known reason to lie. Two other disinterested witnesses testified to conspicuous changes in petitioner's conduct following the murder and to his apparent undue concern about the progress of the murder investigation. Perhaps most suggestive was petitioner's unusual absence from work the day after the murder and his inability to account for that absence or his whereabouts the previous night. Petitioner was unable to explain his whereabouts not only at trial years later, but also during police interviews conducted just months after the crime.
 
 
 22
 Physical evidence gathered at the crime scene lent substance to the suggestive circumstances noted above. Semen samples capable of excluding some eighty percent of the population matched petitioner, although they also matched Williamson. The state's forensic hair expert found eleven pubic hairs and two scalp hairs consistent with petitioner's. Unlike the semen samples, the hair matches could not be explained as equally consistent with Williamson's presence alone (two pubic hairs and two scalp hairs found at the scene were consistent with his) and, thus, were especially damning to the defense theory of the case. Furthermore, while a defense expert discounted some of the pubic hair matches, he also acknowledged the significance of finding matches with two different types of hair relating to the same individual.
 
 
 23
 Finally, a number of the state's witnesses recited inculpatory statements made by petitioner himself, including one in which he unequivocally indicated his participation with Williamson in the crime. Admittedly, petitioner raised questions going to the weight or credibility of this testimony. However, the jury was free to resolve these questions against petitioner and accept the testimony at face value--and we may not reweigh such matters, Romero v. Tansy, 46 F.3d 1024, 1032 (10th Cir.), cert. denied, 115 S.Ct. 2591 (1995). Thus, petitioner's admissions effectively sealed the case already made by the circumstantial and physical evidence presented.
 
 
 24
 Accordingly, we conclude that a rational trier of fact reasonably could have found petitioner guilty beyond a reasonable doubt. See id. (reciting standard for constitutional sufficiency of evidence established in Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Further, we agree with the district court that the state's case was strong enough to undercut petitioner's claims of prejudice in connection with some relatively minor evidentiary issues raised in the petition.[3]
 
 
 25
 We also add in response to issue three enumerated above, that expiration of the statute of limitations on a predicate felony is completely irrelevant to the continuing viability of a felony-murder charge. See, e.g., Sochor v. State, 619 So.2d 285, 290-91 (Fla.), cert. denied, 114 S.Ct. 638 (1993); State v. White, 477 N.W.2d 24, 25-26 (Neb.1991); Commonwealth v. Munchinski, 585 A.2d 471, 482-83 (Pa.Super.Ct.1990), appeal denied, 600 A.2d 535 (Pa.1991); State v. Dennison, 801 P.2d 193, 202 (Wash.1990); People v. Morris, 756 P.2d 843, 850 (Cal.1988); People v. Harvin, 259 N.Y.S.2d 883, 885-86 (N.Y.Sup.Ct.1965). Second, Oklahoma's characterization of first-degree murder as a single crime encompassing alternative theories of deliberate homicide and felony murder, which permits a "unanimous" conviction by a jury that cannot agree on either alternative individually, is constitutionally permissible. See Schad v. Arizona, 501 U.S. 624, 630-45, 648-52 (1991); Sullivan v. Borg, 1 F.3d 926, 927-29 (9th Cir.1993), cert. denied, 114 S.Ct. 931 (1994); see also Lewis v. Parsons, No. 91-6009, 1992 U.S.App. LEXIS 14297, at * 8-* 9 (10th Cir. June 15, 1992)(unpublished order and judgment applying Schad to Oklahoma murder conviction).
 
 
 26
 The judgment of the district court is AFFIRMED. All outstanding motions are denied. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Williamson was tried separately for the murder, found guilty, and sentenced to death. See Williamson v. State, 812 P.2d 384 (Okla.Crim.App.1991), cert. denied, 503 U.S. 973 (1992)
 
 
 [3]
 We need not decide whether the state's case was so overwhelming as to obviate consideration of petitioner's facially troubling claim that a third party's videotaped confession to the crime was withheld by the prosecution. The transcript of petitioner's sentencing hearing clearly shows that counsel had in fact been given a copy of the videotape, see Sentencing Tr. at 5, 10, which would explain why the claim was not raised by counsel in the state courts